IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 18, 2010 Session

## STATE OF TENNESSEE, ex rel., BEE DESELM, et al., v. KNOX COUNTY COMMISSION, et al.

### Appeal from the Chancery Court for Knox County
No. 168904-3     Hon. Daryl Fansler, Chancellor

---

### No. E2008-02627-COA-R3-CV - FILED JULY 30, 2010

---

Plaintiffs' action sought the removal of twelve Knox County office holders who had been appointed by the Knox County Commission in violation of the Open Meetings Act, according to plaintiffs' complaint. Another action, independent of plaintiffs' action, sought removal of the office holders on the grounds that the office holders had been appointed in violation of the Open Meetings Act. Plaintiffs were allowed to intervene in the independent case which, following trial, resulted in a finding that the Commission had violated the Open Meetings Act, and the office holders were removed from office. In this case, the Trial Court held that since plaintiffs had obtained the results that they sought in their action as a result of their intervention that the continuation of this action was barred by the doctrine of res judicata. Plaintiffs sought and were granted several amendments with their complaint seeking relief on other grounds, but the Trial Court denied any further relief to plaintiffs' bid. On appeal, we affirm the Judgment of the Trial Court.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and. D. MICHAEL SWINEY, J., joined.

Herbert S. Moncier, Knoxville, Tennessee, for the appellants, State of Tennessee, ex rel. Bee DeSelm, Donna Brian, Michael Whalen, Jerry Bone and Bee DeSelm, Donna Brian, Michael Whalen, and Jerry Bone, Individually.

Martha H. McCampbell, Albert J. Harb, John K. King, Michael S. Ruble, Wayne A. Ritchie, II., and Richard T. Beeler, Knoxville, Tennessee, for the appellees, Knox County, Tennessee, Knox County Trustee, Fred Sisk, Knox County Register of Deeds, Sherry Witt, Knox County Sheriff, James "J.J." Jones, and Charles Bolus.

## OPINION

### Background

This action arose out of the filling of twelve county government vacancies by defendant/appellee, Knox County Commission, which occurred when the Tennessee Supreme Court, in *Jordan v. Knox County*, 213 S.W. 3d 751 (2007) created the vacancies. The county government positions filled by the Knox County Commission that day were eight county commission seats and the offices of Sheriff, Register of Deeds, Trustee and County Clerk.

Following that action on the same day, appellants filed this action against the Knox County Commission and the twelve newly appointed office holders. The complaint describes the Deselm Plaintiffs as "civic minded citizens, Knox County voters, Knox County politically associated persons", and "Knox County taxpayers" individually and on behalf of all of the people of Knox County sharing those interests. The plaintiffs sought a finding that the Commission had violated the Open Meetings Act and the removal of the appointed officer holders pursuant to the *quo warranto* statutes, and "such other relief as they may be entitled including attorneys fees, damages and costs". The complaint contained a jury demand, and averred that plaintiffs had served the suit on the District Attorney General pursuant to the provisions of *Bennett v. Stutts*, 521 S.W. 2d 575 (Tenn. 1975).

Defendants answered the complaint and filed motions for summary judgment and/or motions to dismiss. Plaintiffs then filed an amended complaint on May 8, 2007 which contained additional factual allegations in an effort for plaintiffs to establish standing. The amended complaint did not allege any additional causes of action, but a second amended complaint, filed on May 14, 2007, added an additional cause of action under Tenn. Code Ann. §5-1-106. [1]

The claim brought under this section stated: "plaintiffs assert this statute as additional authority to sue in the name of the State of Tennessee to remove officers holding office illegally being paid with public funds by an illegal appointment by Knox County

---

[1] Tenn. Code Ann. § 5-1-106 provides: "Suits for the use and benefit of any county in this state against any delinquent officer or such officer's sureties, for moneys or funds due such county, shall be brought in the name of the state of Tennessee, for the use of the county for the benefit of which such suit may be brought."

Commission. The amended complaint does not state that demand was made that the officers return the funds paid to them before the filing of the amended complaint.

The motion for summary judgment was heard by the Chancellor, and the Court held that the citizen plaintiffs did not have standing to bring the *quo warranto* action to have the defendants who were appointed officials removed from office because they had failed to show that they had a special interest or special loss not shared with the general public. The Court also granted the summary judgment on the ground that the plaintiffs failed to appropriately counter or respond to the Commission's Rule 56 motion. Final Judgment was entered on June 7, 2007.

The DeSelm Plaintiffs filed a Tenn. R. Civ. P. 52.02 motion to alter and amend the Trial Court's ruling of May 15, 2007[2] alleging the Trial Court erred in dismissing the *quo warranto* claim against the individual office holders and in granting summary judgment to the Commission on the Open Meetings Act claim, and also filed another Rule 52.02 motion as well as a motion pursuant to Tenn. R. Civ. P. 60. In that motion the plaintiffs contended that the Trial Court should set aside the granting of the Commissions motion for summary judgment as it was error to grant the motion without first considering plaintiffs' Rule 52.02 motion and for mistake, inadvertence, surprise and excusable neglect. Yet another motion to alter or amend pursuant to Rule 52.02 and Rule 60.02(5) was filed by plaintiffs This motion was based on the contention that the Commission had presented its motion for summary judgment in bad faith. None of the post-judgment pleadings sought relief from the Trial Court's dismissal of the claims set forth in the second amended complaint for attorneys fees and under Tenn. Code Ann. § 5-1-106.

A hearing was then held on the post-judgment motions filed by the plaintiffs and an Order was entered by the Trial Court, which set aside only the summary judgment granted the Commission on the Open Meeting Act claim but did not disturb its June 7, 2007 judgment dismissing plaintiffs' claims against the appointed officials under Tenn. Code Ann. §29-35-101 *et seq*. The Court provided the Commission thirty days in which to reassert the motion for summary judgment. Alternatively, the Court indicated that it would entertain any motions to consolidate the case with *McElroy v. Knox County Commission*, docket number 168933-2, which was set for trial on August 28, 2007.

## The *McElroy* Case

Plaintiffs then filed a motion to intervene in the *McElroy* case pursuant to Tenn. Civ. P. 19.01 (1) and (2). In addition to the motions to intervene, the plaintiffs moved that their

---

[2]The Trial Court held that the citizen plaintiffs did not have standing to bring the *quo warranto* action to have the defendants who were appointed officials removed from office because they had failed to show that they had a special interest or special loss not shared with the general public.

case be consolidated with *McElroy*. The record before us does not contain an order granting the motion to intervene. However, the parties and the Trial Court treated the motion to intervene as having been granted.

The *McElroy* three week trial on the merits was participated in by counsel for the plaintiffs. The Interrogatories that went to the jury were based on the Open Meetings Act claims espoused by these Plaintiffs' in their Restated Complaint. After trial, the jury returned its answers to the interrogatories which led to the Trial Court's findings in its Memorandum Opinion that the Knox County Commission had violated the Open Meetings Act on January 31, 2007 while appointing the twelve officials to public office. The Memorandum Opinion treats the DeSelm and Akerman plaintiffs as intervenors. Final Judgment was entered on October 10, 2007 in favor of plaintiffs and against the Knox County Commission. The Judgment reflects the captions of the *McElroy, DeSelm* and *Ackerman* cases, including their docket numbers. The *DeSelm* and *Ackerman* docket numbers were struck out with a hand written line and, again, the *McElroy* docket number was circled.

On October 15, 2007, a motion to alter or amend the judgment was filed on behalf of "Plaintiffs McElroy and Citizen Plaintiffs" which petitioned the Trial Court to alter the judgment to include provisions for a new election. On November 2, 2007, the Trial Court entered a Memorandum Opinion denying plaintiffs' motion to alter or amend the final judgment of October 10, 2007, which included the DeSelm and Ackerman plaintiffs as intervenors in the *MeElroy* case.

### The Case on Appeal

On December 6, 2007 the DeSelm plaintiffs filed a motion for a hearing on their requests for attorneys fees pursuant to the *quo warranto* statutes. In that pleading plaintiffs stated they were intervenors in the *McElroy* case and that their lawsuit had been consolidated with *McElroy*.[3] In response to this motion for attorneys fees, the Commission said that the DeSelm Plaintiffs were not entitled to pursue their claim for attorneys fees because all of their claims, save the Open Meeting Act claims, had been dismissed and judgment was final as of August 9, 2007. As the August 9, 2007 judgment had not been appealed, the Commission argued that the request in December for a hearing on attorneys fees was untimely. Thus, the Commission argued that by intervening, the DeSelm plaintiffs bound themselves to the Court's ruling on attorneys fees under the doctrine of *res judicata*, collateral estoppel and law of the case and the time for appealing the October 10, 2007 judgment had passed. The motion was heard on January 28, 2008 and an order denying the motion for attorneys fees was entered on March 24, 2008. The Court observed that after the August, 2008 order, all of the *DeSelm* plaintiffs intervened in the *McElroy* case and stopped

---

[3]There is no order of consolidation in the record. Indeed, the Trial Court only considered plaintiffs as intervenors.

litigating the *DeSelm* case, and stated that there was no question that the judgment in *McElroy* was a final judgment. The Court then addressed the central issue of whether there was a final judgment in *DeSelm* and concluded there was not. The Court went on to say that as the *DeSelm* plaintiffs chose to intervene in *McElroy* and not go forward with the *DeSelm* suit, the only claim remaining in the *DeSelm* suit, the Open Meetings Act claim, needed to be dismissed as *res judicata* based on the judgment in the *McElroy* suit. The Court denied the DeSelm Plaintiffs' claim for attorneys fees under the Open Meeting Act.

## Appeal

The issues raised on appeal are:

A.      Is this appeal time barred?

B.      Whether appellants lacked standing to pursue their quo warranto claims and other claims against the appointees or Knox County Commission, save and except for their claim against the Commission under the Open Meetings Act?

C.      Whether it was error to dismiss appellants' case after the consolidated trial of open meetings claims?

D       whether appellants were entitled to attorney fees?

E.      Whether appellants' appeal is frivolous, thus warranting sanctions?

The trial court's conclusions of law are reviewed under a purely *de novo* standard with no presumption of correctness. *Taylor v. Fezell,* 158 S.W.3d 352, 357 (Tenn. 2005)*, Union Carbide Corp. v. Huddleston* 854 S.W.2d 87, 91 (Tenn. 1993).

The threshold issue in this appeal is whether Knox County Commission's contention that this appeal is time barred requires this appeal to be dismissed. The Commission contends that by virtue of the intervention of the DeSelm Plaintiffs into the *McElroy* suit, the final judgment in *McElroy,* entered on October 10, 2007, was also a final judgment in the *DeSelm* suit. The Commission argues that the October 10 final judgment bore the captions of three cases, *McElroy, DeSelm* and *Ackerman,* and that the attorneys for McElroy, the DeSelm Plaintiffs and the Ackerman Plaintiffs all approved for entry the October 10, 2007 judgement. Indeed, the plaintiffs' attorney for both *DeSelm* case and *Ackerman*, did approve the judgment, but an examination of the record shows that the caption for *McElroy* was circled on the jury interrogatory form and likewise circled on the final judgment. Moreover, the docket numbers for *DeSelm* and *Ackerman* were crossed out on the final judgment. The Trial Court stated unequivocally that he had granted the DeSelm Plaintiff's motion to intervene into *McElroy* but he had not consolidated the *DeSelm* case with the *McElroy* case

and that he had tried only one case, *McElroy*, in which the DeSelm plaintiffs were intervening plaintiffs. The record clearly demonstrates that this issue is without merit.[4]

The Trial Judge did not err when it held that the *DeSelm* suit had not been finally adjudicated at the time of the January 28, 2008 hearing and without a final judgment, the case was not ripe for appeal. The final judgment in *Deselm* was entered August 1, 2008. As motions for post-judgment relief were filed, the time for filing an appeal did not start to run until the judgment was entered on the post-trial motions. Tenn. R. App. P. 4(b). This appeal was timely filed.

Appellants contend the Trial Court erred when it dismissed all of their claims against the appointed officials in its June 7, 2007 judgment. Appellants' claims against the appointed officials were stated pursuant to Tenn. Code. Ann. § 29-35-101 *et seq.* and Tenn. Code Ann. § 5-1-106. Appellants also claim that they were entitled to maintain actions as taxpayers, as politically associated persons and under constitutional claims. The Trial Court did not err when it dismissed these claims.

Tenn. Code Ann. § 29-35-101 *et seq.* is the codification of the common law remedy of quo warranto. *Jordan v. Knox County*, 213 S.W.3d 751, 765 n. 5 (Tenn. 2007). Tenn. Code Ann. § 29 -35-101 provides:

> (1) Whenever any person unlawfully holds or exercises any public office or franchise within this state, or any office in any corporation created by the laws of this state;
> (2) Whenever any public officer has done, or suffered to be done, any act which works a forfeiture of that officer's office;
> (3) When any person acts as a corporation within this state, without being authorized by law;
> (4) Or if, being incorporated, they:
> (A) Do or omit acts which amount to a surrender or forfeiture of their rights and privileges as a corporation;
> (B) Exercise powers not conferred by law; or
> (C) Fail to exercise powers conferred by law and essential to the corporate existence.

A quo warranto action is typically brought by the attorney general for the district or county as provided by Tenn. Code Ann. § 29-35-109 but under Tenn. Code Ann. § 29- 35-110 a quo warranto action may be filed on behalf of a private individual under certain circumstances. The Supreme Court addressed the circumstance upon which private citizens may bring a quo warranto suit in *Bennett v. Stutts*, 521 S.W.2d 575 (Tenn. 1975).

---

[4]The Commission's argument confuses the difference between intervention of a party in an already existing lawsuit and the consolidation of the lawsuits for trial purposes. *See,* Tenn.R.Civ.P. 24.01 *et seq.*

Citizens who sue pursuant to a quo warranto action to rectify a public wrong must serve a copy of the complaint on the District Attorney General. If the District Attorney General refuses to bring the action the Trial Court is to conduct an in limine hearing to determine whether to permit plaintiffs to proceed. If the Trial Court determines that the District Attorney General's refusal to bring the action, or to authorize the use of his name in its institution, "was improper or unjustified, or that plaintiffs' case is prima facie meritorious, the trial court shall permit the action to proceed." *Bennett v. Stutts,* at 577. However, the Court in *Bennett* held that the quo warranto action cannot be maintained by a private citizen unless that private citizen can aver a special interest or a special injury not common to the public generally. *Id.* at 576 (citing authorities).

The Trial Court dismissed the DeSelm Plaintiffs' action against the appointed officials based on its conclusion that the plaintiffs did not have standing to sue under Tenn. Code Ann. § 29-35-101 *et seq.,* as they had failed to allege a special interest or special loss not shared with the general public. They contend that they do not need to allege that they have a special interest or have sustained a loss not shared by the general public to sustain a cause under those code sections, and, alternatively, if such a showing is necessary, they did have special interests not shared by the general public.

This Court's recent decision in *State of Tennessee ex rel. Bee DeSelm, et al. v. Owings, et al.* 310 S.W.3d 353 (Tenn. Ct. App. 2009) *perm. app. denied.* (Mar. 1, 2010), *perm. rehear denied* (Mar. 22, 2010) is instructive and authoritative on the issue of standing in this case.

The plaintiffs in *Owings* were ten citizens of Knox County and the defendants were John W. Owings, the Knox County Law Director, and Knox County. The suit sought a declaratory judgment and a writ of mandamus pertaining to the plaintiffs' request that newly elected officers of Knox County be sworn in immediately following the certification of the election results rather than waiting until a later date. The *Owings* complaint described the plaintiffs as: "State of Tennessee on relationship of [plaintiff's individual names] and said named Citizens as an Association exercising their Tenn. Const. Art. 1, §§ 1, 8 and 17 rights; as an [sic] *Bennett v. Stutts* Association of Public Spirited Citizens; as an Association of Local Taxpayers; as an Association of T.C.A. § 29-35-110 Citizens; as T.C.A. § 8-47-110 Citizens; and as Politically Associated Persons. *Owings* at 355. Additionally, the plaintiffs refer to themselves "as members of a partnership of publicly spirited citizens known as 'The Citizen Plaintiffs.' " They allege that their "partnership" has some 13 objectives in pursuit of the partnership's "purpose." All of these objectives can be properly characterized as addressing alleged misdeeds or threatened wrongs by the government of Knox County and its officers. The plaintiffs purport to act for themselves and "voters, taxpayers, candidates, [and] civic[-] minded citizens." Later in their original complaint, in an attempt to bolster their "standing" allegations, the plaintiffs point to their "prior participation in litigation individually, collectively and in groups to accomplish the purposes of [their] partnership" and

refer specifically to 18 lawsuits against various and sundry defendants, including Knox County and county officers. They allege that these lawsuits reflect their "special interest, not shared by the general public of Knox County." *Id* at 356.

The Trial Court in *Owings* dismissed the suit upon a finding that the plaintiffs did not have standing to bring the suit and plaintiffs appealed. *Id*. On appeal, this Court first addressed the general concept of standing, citing the Tennessee Supreme Court in *American Civil Liberties Union v. Darnell,* 195 S.W.3d 612 (Tenn.2006):

> Courts employ the doctrine of standing to determine whether a particular litigant is entitled to have a court decide the merits of a dispute or of particular issues. Grounded upon "concern about the proper-and properly limited-role of the courts in a democratic society," the doctrine of standing precludes courts from adjudicating "an action at the instance of one whose rights have not been invaded or infringed." The doctrine of standing restricts "[t]he exercise of judicial power, which can so profoundly affect the lives, liberty, and property of those to whom it extends, ... to litigants who can show 'injury in fact' resulting from the action which they seek to have the court adjudicate." Without limitations such as standing and other closely related doctrines "the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights."

> To establish standing, a plaintiff must show three "indispensable" elements "by the same degree of evidence" as other matters on which the plaintiff bears the burden of proof. First, a plaintiff must show a distinct and palpable injury: conjectural or hypothetical injuries are not sufficient. Standing also may not be predicated upon an injury to an interest that the plaintiff shares in common with all other citizens. Were such injuries sufficient to confer standing, the State would be required to defend against "a profusion of lawsuits" from taxpayers, and a purpose of the standing doctrine would be frustrated.

> The second essential element of standing is a causal connection between the claimed injury and the challenged conduct. A plaintiff may satisfy this element by establishing the existence of a "fairly traceable" connection between the alleged injury in fact and the defendant's challenged conduct. The third and final element necessary to establish standing is a showing that the alleged injury is capable of being redressed by a favorable decision of the court.

It is important to note that standing does not depend upon a plaintiff's likelihood of

success on the merits; however, the standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted.

*Owings* at 357.

As in this case, both the plaintiffs and the defendants in *Owings* relied on the Supreme Court case of *Bennett v. Stutts,* 521 S.W.2d 575 (Tenn.1975). The plaintiffs argued that *Bennett* supports their position. The defendants contended that that landmark case bolsters their position, and the Trial Court's conclusion, that the plaintiffs lack standing. The facts in *Bennett* are similar to the instant case in that eighteen citizen plaintiffs and taxpayers in Dyer County sued to invalidate the election of a county official because the election was conducted by the County Court using a secret ballot in violation of a statute that required the votes to be open to the public, and defendants challenged plaintiffs' standing. Early on in the *Bennett* opinion, the Supreme Court stated the "settled law":

It is the settled law in this state that private citizens, as such, cannot maintain an action complaining of the wrongful acts of public officials unless such private citizens aver special interest or a special injury not common to the public generally. *Id.* (citations omitted).

The plaintiffs in *Owings,* as well as here, argued that there were exceptions to the general rule, but this Court in that case held that none of the factors asserted vested the plaintiffs with standing, and that in the absence of standing they could not proceed with their action. *Owings,* at 359.

Pursuant to the holding in *Owings*, the Trial Court did not err when it dismissed the claims of the *DeSelm* plaintiffs for lack of standing, as the pleadings did not establish the plaintiffs claimed a special interest or had sustained an injury not common to the public. The *DeSelm* plaintiffs amended their complaint to allege a cause of action pursuant to Tenn. Code Ann. §5-1-106 that provides:

Suits for the use and benefit of any county in this state against any delinquent officer or such officer's sureties, for moneys or funds due such county, shall be brought in the name of the state of Tennessee, for the use of the county for the benefit of which such suit may be brought.

Plaintiffs sued pursuant to this statute in the name of Tennessee to "remove officers

holding office illegally being paid with public funds by an illegal appointment by Knox County Commission." There is no evidence in this record that notice of the amended complaint was ever filed with the Knox County District Attorney General. The Trial Court, in its June 7, 2007 judgment, granted plaintiffs' motion to amend the complaint but in the same judgment dismissed all claims against the appointed officials. Although the Trial Judge did not specifically address this alleged claim, the judgment clearly states that all claims were dismissed. In support of their position, appellants cite to two cases, *Metropolitan Government of Nashville and Davidson County v. Fulton*, 701 S.W.2d 597 (Tenn. 1985) and *Peeler v. Luther*, 135 S.W.2d 926 (Tenn. 1940), and these cases are inapposite to issues before us. Here, as in *Fulton*, the DeSelm Plaintiffs made no allegation in the second amended complaint that the requisite notification was ever provided to the Knox County Commission regarding the alleged illegal salaries paid to the appointed officials prior to the filing of the amended complaint. Accordingly, the Trial Court's dismissal of plaintiffs' cause of action under Tenn. Code Ann. § 5-1-106 was not error and we affirm.

Appellants also appeal the Trial Court's dismissal of their claims brought pursuant to the Tennessee Constitution. Appellants claim that the Trial Court held that "there is no cause of action for a violation of a right provided by the Tennessee Constitution." The citation provided in Appellants' brief for this statement by the Trial Court is inaccurate and no reference can be found in the record before this Court as to any findings the Trial Court made regarding the dismissal of the violation of constitutional rights claims. Nevertheless, the Trial Court did dismiss all claims in its June 7, 2007 order and only revived the Open Meetings Act claim against the Commission in its subsequent August 9, 2007 order.

We do not entertain appellants' argument on this issue as all claims in this matter for the ouster of the appointed officials, including the constitutional claims, were rendered moot by the Chancery Court's Memorandum and Order in *McElroy* and the officials' subsequent vacancy of their offices on October 5, 2007.

We do not issue advisory rulings. *State v. Rodgers,* 235 S.W. 3d 92, 97 (Tenn. 2007). "However convenient or desirable for either party that the questions mooted in the case be authoritatively settled for future guidance, the court is not justified in violating fundamental principles of judicial procedure to gratify this desire." *Id.* (quoting *State ex rel. Lewis v. State*, 347 S. W. 2d 47, 48 (Tenn. 1961).

The final judgment in *McElroy* resulted in the ouster of the appointed officials, thus the remedies sought under the constitutional claims in the *DeSelm* case, the ouster of those same officials, was reached. Accordingly, under the mootness doctrine, as discussed, the ouster of the appointed officials is no longer a justiciable issue as it no longer involves a

present, ongoing controversy. Accordingly, the issue of whether the Chancery Court erred when it dismissed the constitutional claims in the *DeSelm* complaint will not be considered because it is moot. Appellants contend the Trial Court erred when it dismissed the *DeSelm* case following entry of the final judgment in *McElroy* based on the doctrine of *res judicata*.

The only claim left in *DeSelm* at the time of the dismissal was the violation of the Open Meetings Act claim against the Commission for its conduct at the January 31, 2007 meeting. The only remedy sought was that the Court find that various actions by the Commission in the appointment of the officials process constituted a violation of the Open Meetings Act and that those actions were void. Upon motion of the DeSelm Plaintiffs they all were allowed to intervene in *McElroy* and, accordingly, they became parties to the *McElroy* case. The Judgment in the *McElroy* case held that the Knox County Commission had violated the Open Meetings Act on January 31, 2007 while appointing the twelve officials to public office, and the actions of the Commission at that meeting were declared void. The officials at issue left office on that date. The final Judgment in favor of the plaintiffs included the intervening plaintiffs against Knox County Commission. The *McElroy* judgment provided the relief the plaintiffs were seeking and the Trial Court determined that all issues in *DeSelm* had been decided by the *McElroy* judgment and entered an Order dismissing *DeSelm* based on the doctrine of *res judicata*. We affirm the Trial Court on this issue.

While the Trial Court dismissed the *DeSelm* suit based on *res judicata sua sponte*, the factors listed in *Lee v. Hall*, 790 S.W.2d 293-294 (Tenn. Ct. App. 1990) are applicable to the case before us. Appellants contend that the fourth factor listed in *Lee v. Hall* was not met because "there were significant differences between [*Deselm's*] complaint and *McElroy's* complaint. The record does not contain a copy of the *McElroy* complaint, and an exact comparison cannot be made. However, the judgment in *McElroy* was based solely on the finding that the January 31, 2007 Commission meeting violated the Open Meetings Act and a review of the "Restated Complaint" in *Deselm* shows that violation of the Open Meetings Act was the only cause of action remaining in that suit. The differences between the two suits set forth by appellants in their brief are either immaterial or nonexistent. None of the differences appellants deem to be significant on this issue are valid. We hold the Trial Court did not err when it dismissed *DeSelm* based on the doctrine of *res judicata*.

Appellants contend that the trial court erred when it denied their request for attorneys fees. The Tennessee Supreme Court, in *House v. Estate of Edmondson,* 245 S.W.3d 372 (Tenn. 2008) recently discussed the "American Rule" regarding awards of attorneys fees. The Court first noted that Tennessee, like most jurisdictions, adheres to the "American rule." *House* at 377 (citing *John Kohl & Co. v. Dearborn & Ewing,* 977 S.W.2d 528, 534 (Tenn.1998)). The American rule provides that a party in a civil action may not recover

attorney's fees absent a specific contractual or statutory provision providing for attorney's fees as part of the prevailing party's damages. *Id.* The Court explained that the American Rule, is "firmly established in this state," . *Id.* at 377, and is based on several public policy considerations. These considerations are (1) since litigation is inherently uncertain, a party should not be penalized for merely bringing or defending a lawsuit. *Id.* at 377; (2) the poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included paying the fees of their opponent's lawyer. *Id.;* (3) requiring each party to be responsible for their own legal fees promotes settlement. *Id.* at 377; and (4) the time, expense, and difficulty inherent in litigating the appropriate amount of attorney's fees to award would add another layer to the litigation and burden the courts and the parties with ancillary proceedings. *Id.* at 377. The Supreme Court concluded that "the American rule reflects the idea that public policy is best served by litigants bearing their own legal fees regardless of the outcome of the case." *Id.*

Here there is no dispute that no contract existed between the parties and the Trial Court based its denial of the DeSelm Plaintiffs request for attorneys fees on the fact that the Open Meetings Act does not provide an award of attorneys fees to a successful plaintiff. The finding is not disputed by appellants and is supported by the absence of any specific language regarding an award of attorneys fees to a successful litigant in the Open Meetings Act, Tenn. Code Ann. § 8-44-101, *et seq. Accord: Cracker Barrel Old Country Store, Inc. v. Epperson,* 284 S.W.3d 303, 313 (Tenn.2009).

However, appellants set forth numerous alternative arguments as to why they are entitled to attorneys fees. First, it should be noted that four of the eleven arguments for attorneys fees presented by the DeSelm Plaintiffs on appeal were not argued to the Court below, and will not be considered on appeal. We have considered the remaining seven arguments and find them to be without merit, negating the need for further discussion.

The Trial Court dismissed the *DeSelm* case based on the doctrine of *res judicata*, thus the DeSelm Plaintiffs were not "prevailing plaintiffs" on the merits and an award of attorneys fees cannot be awarded under any theories presented. We affirm the Judgment of the Trial Court on this issue.

Finally, appellee contends that appellants' claims for relief on appeal lack merit, and this Court should hold the frivolous. We decline to find the case so frivolous as to justify an award of attorney's fees and costs to appellee.

In sum, the Trial Court did not err when it dismissed all claims brought by the *DeSelm* plaintiffs to the original and amended complaints, save the claim brought under the Open

Meetings Act. The Trial Court did not err when it dismissed the *DeSelm* case based on the doctrine of res judicata, as the DeSelm Plaintiffs were intervening plaintiffs in the *McElroy* case which was decided in plaintiffs' favor. The trial court did not err when it denied the *DeSelm* Plaintiffs' petition for attorneys fees, and the appellee's argument that the appeal is time barred and frivolous is also without merit.

We affirm the Judgment of the Trial Court and remand, and assess the costs in our discretion, one-half to the appellants and one-half to appellees.

_____
HERSCHEL PICKENS FRANKS, P.J.