In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-12-00452-CV
_____

IN RE COMMITMENT OF DANIEL MARTIN MARTINEZ

On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 12-01-00975 CV

**MEMORANDUM OPINION**

The State of Texas filed a petition to commit Daniel Martin Martinez as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2012). A jury found Martinez to be a sexually violent predator and the trial court rendered a final judgment and an order of civil commitment. On appeal, Martinez contends (1) the judicial construction of the SVP statute renders it unconstitutional; (2) the trial court erred in admitting evidence of Martinez's murder conviction; (3) the trial court submitted an improper jury charge; and (4) the evidence is factually insufficient to support the jury's verdict. We affirm the trial court's judgment.

1

## I. The Constitutionality of the SVP Statute

In his first issue, Martinez argues that the Texas Supreme Court's decision in *Bohannan* interpreted portions of the SVP statute in such a way as to render the statute facially unconstitutional and in violation of the Fourteenth Amendment's due process clause. *See generally In re Commitment of Bohannan*, 388 S.W.3d 296 (Tex. 2012), *cert. denied*, 133 S. Ct. 2746 (2013). We have previously rejected a similar argument. *See In re Commitment of Anderson*, 392 S.W.3d 878, 885 (Tex. App.—Beaumont 2013, pet. denied). In *Anderson* we explained that, "*Bohannan* did not eliminate any proof required by the statute for a sexually-violent-predator finding, nor did the Supreme Court change the statute or render it unconstitutional." *Id.* We overrule Martinez's first issue.

## II. Admissibility of Evidence of 1975 Murder Conviction

In three issues, Martinez contends the trial court committed reversible error when it allowed evidence of a 1975 murder conviction before the jury. In his second issue, Martinez complains that the trial court erred in admitting a penitentiary packet ("pen packet") and related testimony regarding Martinez's 1975 murder conviction because the evidence was not relevant. In his third issue, Martinez complains that the trial court erred in admitting testimony of the details of the 1975 murder because that testimony is inadmissible hearsay. In his fourth

issue, Martinez argues that the evidence should have been excluded because any probative value was clearly outweighed by its prejudicial effect on the jury. We address these issues together, and after reviewing the record, we conclude that the trial court did not abuse its discretion when it admitted the pen packet and allowed the testimony related to the 1975 murder conviction.

We review the admission of evidence under an abuse of discretion standard. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998); *In re Commitment of Salazar*, No. 09-07-345-CV, 2008 WL 4998273, at *2 (Tex. App.—Beaumont Nov. 26, 2008, pet. denied) (mem. op.). A trial court abuses its discretion when it acts without reference to any guiding rules and principles, or if it acts arbitrarily and unreasonably. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). A judgment will not be reversed based on the admission or exclusion of evidence unless the appellant establishes that the trial court's ruling was in error and that the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *Salazar*, 2008 WL 4998273, at *2; *see also* Tex. R. App. P. 44.1. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action

3

more probable or less probable than it would be without the evidence." Tex. R. Evid. 401. If evidence is not relevant, it is inadmissible. Tex. R. Evid. 402.

## A. Relevance of the 1975 Murder Conviction

During a pretrial hearing, the State sought to introduce Martinez's pen packet regarding a 1975 murder conviction and asserted it was relevant to establish that Martinez suffers from a behavioral abnormality. Martinez objected that the prejudicial effect of the 1975 murder conviction and surrounding details clearly outweighed any probative value and was not relevant to show Martinez suffered a behavioral abnormality. After performing a balancing test, the trial court admitted the evidence over Martinez's objections, and found the evidence could be relevant to show that Martinez suffered from a behavioral abnormality. On admitting the pen packet, the trial court informed Martinez that if the State's expert failed to show how the murder conviction supported his opinions, Martinez should reassert his objection.

The judgment in the pen packet revealed that in 1975, Martinez pled guilty to a murder charge in Montgomery County and received punishment of twenty-six years confinement. Over Martinez's objections, the trial court also admitted into evidence Martinez's responses to the State's requests for admission wherein Martinez admitted that in 1975 he pled guilty to the charge of murder in

4

Montgomery County and received a twenty-six year prison sentence.[1] At trial, Martinez further testified that he was convicted of murder. He then, in response to the State's questions, testified to the graphic details of the events leading up to and following the murder.

Dr. David Self, a forensic psychiatrist, testified on behalf of the State. Dr. Self testified that he relied upon the information surrounding Martinez's criminal history in forming his opinion as to whether Martinez has a behavioral abnormality. He testified that experts in his field of study routinely rely on an individual's criminal history, in addition to other information, to conduct this type of evaluation. He testified that Martinez's criminal history and criminality were significant because when combined with Martinez's sexual deviancy, they place Martinez at a higher risk to recidivate. Martinez's counsel did not reassert his objection at any point during Dr. Self's testimony. Martinez's counsel cross-

---

[1] In one portion of his brief, Martinez contends that the State shifted the burden of proof by using Martinez's own admissions and testimony to establish prior convictions in violation of his constitutional rights. We note that the burden of proof was properly explained to the jury. We have previously rejected this argument and held that if the trial court finds the responses relevant to the disputed issues, the trial court may allow a party's responses to the opposing party's request for admission to be used as evidence in SVP cases. *See In re Commitment of Hernandez*, No. 09-12-00329-CV, 2013 WL 5302615, at *3 (Tex. App.—Beaumont Sept. 19, 2013, no pet.) (mem. op.); *In re Commitment of Camarillo*, No. 09-12-00304-CV, 2013 WL 2732662, at **2-3 (Tex. App.—Beaumont, June 13, 2013, no pet.) (mem. op.).

examined Dr. Self about the details surrounding the murder conviction and Dr. Self explained "deviancy and the history of acting on deviancy is really the core of the behavioral abnormality[,] [b]ut then the criminality, unstable lifestyle with all that it entails, is certainly a related factor."

Dr. Marisa Mauro, a clinical and forensic psychologist, testified on behalf of Martinez. She described Martinez's nonsexual criminal history and testified about his murder conviction. Both Drs. Self and Mauro diagnosed Martinez with antisocial personality disorder. Like Dr. Self, she testified that these nonsexual criminal offenses are significant to general criminality, and "lend support . . . for the antisocial personality disorder diagnosis[.]" She agreed that an offender's criminal history or general criminality is important for evaluating an offender for a behavioral abnormality. She also agreed that the details of the offenses and the number of convictions are important in forming an opinion as to whether the person has a behavioral abnormality. She further agreed that Martinez's nonsexual criminal history is a risk factor that must be considered. We therefore conclude that the murder conviction and facts surrounding Martinez's nonsexual criminal history are relevant to the issue of whether Martinez suffers from a behavioral abnormality that predisposes him to engage in a predatory act of sexual violence. We overrule Martinez's second issue.

6

## B. Hearsay

In his third issue, Martinez complains that the trial court erred in admitting testimony from Martinez and Dr. Self regarding the details of the murder conviction because it was inadmissible hearsay.

As explained above, Martinez personally testified as to the details of his murder conviction, and the actions he took after the murder. This testimony is not hearsay. *See* Tex. R. Evid. 801(d). Dr. Self testified to many of the same details that Martinez related to the jury.

Under Rule 705 of the Texas Rules of Evidence, an expert may disclose on direct examination, or be required to disclose on cross-examination, the underlying facts or data on which the expert bases an opinion. Tex. R. Evid. 705(a); *In re Commitment of Yaw*, No. 09–08–042 CV, 2008 WL 5096511, at *1 (Tex. App.— Beaumont Dec. 4, 2008, no pet.) (mem. op.). "When an expert relies upon hearsay in forming his opinion, and it is of a type reasonably relied upon by such experts, the jury is generally permitted to hear it." *Salazar*, 2008 WL 4998273, at *4. The trial court provided the jury with a limiting instruction, which we presume the jury followed.[2] *See* Tex. R. Evid. 705 (d); *see In re Commitment of Day*, 342 S.W.3d

---

[2] The trial court instructed the jury: "[H]earsay is normally not admissible; however, certain hearsay information contained in records and reviewed by experts is allowed into evidence through expert testimony. Such evidence is admitted only

7

193, 199 (Tex. App.—Beaumont 2011, pet. denied) (When the trial court has given the jury a limiting instruction, we presume the jury followed the court's instruction.). We overrule Martinez's third issue.

## C. Balancing Test

In his fourth issue, Martinez argues that even if the details of the murder conviction were not admitted for their truth, the trial court should have excluded that evidence under Rules 403 and 705(d) of the Texas Rules of Evidence. Rule 705 provides in part that inadmissible evidence relied upon by an expert shall be excluded if the danger that it will be used for some purpose "other than as explanation or support for the expert's opinion outweighs [its] value as explanation or support or [is] unfairly prejudicial." Tex. R. Evid. 705(d); *see also In re Commitment of Wilson*, No. 09–08–00043–CV, 2009 WL 2616921, at *9 (Tex. App.—Beaumont Aug. 27, 2009, no pet.) (mem. op.).

Dr. Self explained the facts he considered in forming his opinions and how those facts affected his evaluation of Martinez. The trial judge performed a balancing test and could have reasonably concluded the evidence assisted the jury

---

for the purpose of showing the basis of the expert's opinion." The trial court gave the jury a similar limiting instruction, informing the jury that such information "was admitted only for the purpose of showing the basis of the experts' opinion[s] and cannot be considered as evidence to prove the truth of the matter[s] asserted."

in weighing the testimony and was not unfairly prejudicial. The trial court gave the jury a limiting instruction explaining that the information reviewed by the experts was admitted only for the purpose of showing the basis of the expert's opinion. We overrule Martinez's fourth issue.

## III. Proper Jury Charge

In his fifth issue, Martinez argues the trial court erred in failing to submit all of the elements under Chapter 841 to the jury. He argues the trial court erred by granting a partial directed verdict in favor of the State on the issue of whether Martinez is a repeat sexually violent offender. Martinez argues that because he requested a jury trial, he was entitled to have a jury determine this issue.

The State submitted into evidence a pen packet containing a judgment wherein Martinez was convicted of aggravated sexual assault in 2006 and sentenced to an eight-year prison term. The pen packet also contained a judgment indicating that Martinez was convicted of sexual assault in 2008 and received a three-year sentence for his crime. Martinez admitted to both of these convictions in his responses to requests for admissions and these responses were read to the jury. In his testimony before the jury, Martinez admitted to having these two convictions. He admitted that he pled guilty to the 2008 sexual assault charge. He

9

also testified about and admitted to the facts surrounding his 2006 aggravated sexual assault conviction.

"A court may instruct a verdict if no evidence of probative force raises a fact issue on the material questions in the suit." *Prudential Ins. Co. of Am. v. Financial Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). In considering a motion for a directed verdict, the evidence must be evaluated in a light most favorable to the nonmovant. *Id.* at 82.

The SVP statute requires the State to prove beyond a reasonable doubt that "the person is a sexually violent predator." Tex. Health & Safety Code Ann. § 841.062(a). The statute defines a "sexually violent predator" as a person who "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id.* § 841.003(a). A person is a "repeat sexually violent offender . . . if the person is convicted of more than one sexually violent offense and a sentence is imposed for at least one of the offenses[.]" *Id.* § 841.003(b). "'Sexually violent offense'" includes, among other things, an offense of sexual assault or aggravated sexual assault. *See id.* § 841.002(8); *see also* Tex. Penal Code Ann. §§ 22.011, 22.021 (West 2011).

We conclude that the evidence conclusively establishes the existence of Martinez's prior convictions and sentences for more than one sexually violent offense. *See* Tex. Health & Safety Code Ann. § 841.003(b). Therefore, there was no fact question for the jury to decide on this issue. The trial court did not err in granting a directed verdict on this element. *See In re Commitment of Scott*, No. 09-11-00555-CV, 2012 WL 5289333, at *2 (Tex. App.—Beaumont Oct. 25, 2012, no pet.) (mem. op.). We overrule Martinez's fifth issue.

In his sixth issue, Martinez argues that the trial court erred in refusing to subdivide the jury question into three parts. Martinez proposed that the first question to the jury should be, "Do you find beyond a reasonable doubt that Daniel Martin Martinez is a repeat violent sex offender, yes or no?" The second question asked, "Do you find beyond a reasonable doubt that Daniel Martin Martinez suffers from a behavioral abnormality, yes or no?", and the third question "If a behavioral abnormality does exist, do you find beyond a reasonable doubt that the behavioral abnormality makes Daniel Martin Martinez likely to engage in a predatory act of sexual violence, yes or no?" Martinez acknowledges that the trial court should submit the questions in broad-form whenever feasible, but argues that Martinez was entitled to have the questions subdivided to clarify the issues.

We have repeatedly addressed this issue and have held that the trial court may, within its discretion, submit the controlling issue in a single question and instruct the jury regarding "behavioral abnormality" in a definition. *See In re Commitment of Smith*, No. 09-12-00001-CV, 2013 WL 4279647, at *4 (Tex. App.—Beaumont Aug. 15, 2013, no pet.) (mem. op.); *In re Commitment of Bath*, No. 09-11-00559-CV, 2012 WL 3860631, at *5 (Tex. App.—Beaumont Sept. 6, 2012, no pet.) (mem. op.); *In re Commitment of Elkins*, No. 09-10-00557-CV, 2012 WL 2849164, at *3 (Tex. App.—Beaumont July 12, 2012, no pet.) (mem. op.); *In re Commitment of Campbell*, No. 09-11-00407-CV, 2012 WL 2451620, at **7-8 (Tex. App.—Beaumont June 28, 2012, pet. denied) (mem. op.); *In re Commitment of Reed*, No. 09-11-00484-CV, 2012 WL 1072255, at *3 (Tex. App.—Beaumont Mar. 29, 2012, no pet.) (mem. op.). In cases governed by a statute, the jury charge should track the language of the statutory provision as closely as possible. *See Toennies v. Quantum Chem. Corp.*, 998 S.W.2d 374, 377 (Tex. App.—Houston [1st Dist.] 1999), *aff'd*, 47 S.W.3d 473 (Tex. 2001). "[W]henever feasible," the trial court must "submit the cause upon broad-form questions." Tex. R. Civ. P. 277.

The Supreme Court has held that "[t]he condition and predisposition are one and the same." *Bohannan*, 388 S.W.3d at 302-03. "[W]hether a person 'suffers

12

from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence' is a single unified issue." *Id.* at 303. We do not find the trial court erred in submitting the jury charge in this case when the charge tracked the language of the statute and was submitted in a broad-form question with definitions to assist the jury in answering the question of whether Martinez suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See* Tex. Health & Safety Code Ann. § 841.003(a)(2). We overrule Martinez's sixth issue.

## IV. Factual Sufficiency

In his seventh issue, Martinez complains that the evidence is factually insufficient to support a finding beyond a reasonable doubt that he is a sexually violent predator. As discussed above, the SVP statute requires the State to prove beyond a reasonable doubt that the "person is a sexually violent predator[,]" which is defined as a person who "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." Tex. Health & Safety Code Ann. §§ 841.003(a); 841.062(a). According to the statute, a "'[b]ehavioral abnormality'" is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to

13

the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2). In evaluating whether the evidence is factually sufficient in an SVP commitment case, we must weigh the evidence to determine if a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that compels ordering a new trial. *Day*, 342 S.W.3d at 213. Conclusory or speculative testimony is not relevant evidence because it does not tend to make the existence of a material fact more or less probable. *City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009). Additionally, "[b]are, baseless opinions will not support a judgment[.]" *Id.*

Martinez argues the State failed to present sufficient evidence that (1) his behavioral abnormality makes him likely to engage in a predatory act of sexual violence; (2) he has a predisposition to re-offend or a serious difficulty controlling his behavior; and (3) that he is likely to recidivate in the future. We disagree. As explained above, the State conclusively proved that Martinez is a repeat sexually violent offender. At trial Martinez testified to some of the details of his sexual assaults. He admitted that the victim in his aggravated sexual assault charge was a mentally ill woman. He admitted to the graphic details of this assault, including that while he was in the middle of assaulting her, he told her that he had just gotten out of prison and would probably go back to prison for life. He admitted to

14

covering her face and mouth until she passed out, and then sexually assaulting her while she was unconscious. He testified that up until a month before his trial, he had never requested any kind of sex offender treatment. Dr. Self testified that it is his opinion that Martinez has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. His methodology included reviewing records and conducting an interview with Martinez. He testified that Dr. Jason Dunham assessed Martinez and reported that he too believed Martinez has a behavioral abnormality and has a moderate to high level of risk for reoffending. Based on his full assessment of Martinez, Dr. Self placed Martinez at high-moderate to high risk of re-offense.

Dr. Self diagnosed Martinez with paraphilia not otherwise specified, non-consenting type; poly-substance abuse/dependence with focus on alcohol, marijuana, cocaine, and crack cocaine; and a provisional diagnosis of major depression that is recurrent with psychotic features. Dr. Self testified that Martinez's diagnoses increase his risk of recidivism.

Dr. Self identified Martinez's risk factors for reoffending. He testified that Martinez is at greater risk because he had a stranger victim and his victim pool has a broad range of ages. Dr. Self testified that Martinez's sexual deviance increases his risk of reoffending. He explained that his paraphilia is manifested by a "taste

for coercive or nonconsenting sex[.]" This condition is a chronic lifelong condition. Dr. Self explained that Martinez having this condition, coupled with the fact that he has acted on his inappropriate sexual urges, demonstrates that he is tolerant of sexual assault, which increases his risk for reoffending. Dr. Self also identified lifestyle instability or criminality as another risk category. Dr. Self explained that Martinez had severe childhood behavioral difficulties and a long list of nonsexual offenses, including theft, burglary, drug crimes, DWI, and murder. Dr. Self explained that Martinez has criminal versatility, which is a hallmark of a psychopath. He testified that Martinez has fifteen or more arrests. Dr. Self identified a study that indicated that anyone with five or more arrests is at very high risk for recidivism. Dr. Self testified that Martinez told him he would only be interested in sex offender treatment if it would help him with parole.

Dr. Self also considered positive factors that might lower Martinez's risk of reoffending. He acknowledged that Martinez's age diminishes his risk some, but not very much. He explained that while Martinez is fifty-seven years old, he was forty-eight when he committed his last serious offense. Dr. Self found no other factors that lowered Martinez's risk.

Dr. Mauro also interviewed Martinez and reviewed records to aid her in determining whether Martinez suffers from a behavioral abnormality. Dr. Mauro

testified that she does not believe that Martinez suffers from a behavioral abnormality or has a paraphilia. She testified that she does not see any evidence that Martinez has had serious difficulty controlling his emotional or volitional capacity. Instead of a pattern of sexually deviant behavior, Dr. Mauro testified that Martinez's crimes were just isolated incidents where Martinez was under the influence of a substance. She did give him a diagnosis of antisocial personality disorder, but she testified that she sees signs in Martinez that he is starting to age-out of this disorder. She also testified that she did not find a significant relationship between this diagnosis and committing sexually violent acts. She ruled out a diagnosis of polysubstance dependence. Dr. Mauro tested Martinez with the PCL-R to measure psychopathy and recalled that he scored twenty-seven which indicates mixed psychopathy. Nevertheless, Dr. Mauro does not believe there is a significant association between psychopathy and recidivism. To measure recidivism of sexual offending, she performed the Static-99R and the Static-2002R. On the Static-99R, she scored Martinez at a five, which places him in the moderate to high range of recidivism. On the Static-2002R, she scored Martinez at a four, which means his risk is low to moderate.

Dr. Mauro identified some risk factors that elevate Martinez's risk of recidivism. She also identified some protective factors that might reduce his risk,

including her opinion that he does not have a paraphilia, he is able to establish long-term relationships, he has family support, he has some job skills, and he has some education. She testified that these factors mitigate Martinez's risk "[a] little bit." But, she also admitted that he has not had contact with his family in several years, he has not had stable employment, he has quit a number of jobs, and at one point he earned a living by selling crack. She acknowledged that Martinez has exhibited sexually deviant behavior and agreed that Martinez is a pathological liar. Finally, she too diagnosed him with antisocial personality disorder.

The jury determines the credibility of the witnesses and the weight to be given their testimony, and whether to believe some testimony and disbelieve other testimony. *In re Commitment of Mullens*, 92 S.W.3d 881, 887 (Tex. App.—Beaumont 2002, pet. denied) (mem. op.). The jury may draw reasonable inferences from the evidence. *See Lacour v. State*, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000). The jury can infer Martinez's current difficulty controlling his behavior not just from his past behavior, but also from his own testimony, and that of Dr. Self's testimony. *See In re Commitment of Soto*, No. 09-11-00600-CV, 2013 WL 2732082, at *3 (Tex. App.—Beaumont June 13, 2013, no pet.) (mem. op.); *In re Commitment of Burnett*, No. 09-09-00009-CV, 2009 WL 5205387, at *4 (Tex. App.—Beaumont Dec. 31, 2009, no pet.) (mem. op.). The jury heard evidence of

18

Martinez's offenses, his testimony, and the expert's testimony regarding his risk for reoffending. Considering all the evidence, the record does not reflect a risk of injustice that compels granting a new trial. *See Day*, 342 S.W.3d at 213. The evidence is factually sufficient to support the jury's verdict. We overrule Martinez's seventh issue.

Having overruled all of Martinez's issues, we affirm the judgment of the trial court.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on July 1, 2013
Opinion Delivered October 31, 2013

Before McKeithen, C.J., Gaultney and Kreger. JJ.