IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 26, 2010 Session

**BEE DESELM, CARL SEIDER, JAMES GRAY, DONNA BRIAN,
MIKE WHALEN, SUSAN JERKINS, GERALD BONE,
RICHARD HELD, ALBERT AKERMAN, MARGO AKERMAN,
ROBERT CUNNINGHAM, AND MILLIE CUNNINGHAM**
v.
**TENNESSEE PEACE OFFICERS STANDARDS AND TRAINING
COMMISSION AND TIMOTHY HUTCHISON**

**An Appeal from the Chancery Court for Davidson County
No. 07-2227-II (III)    Ellen Hobbs Lyle, Chancellor**

_____

**No. M2009-01525-COA-R3-CV - Filed October 8, 2010**

_____

This is an appeal of a lawsuit by Knox County citizens to have a former county sheriff decertified as a peace officer. The plaintiffs' first lawsuit was dismissed for failure to exhaust administrative remedies. The plaintiffs then pursued administrative remedies but were denied administrative relief based in part on an administrative finding that they did not have standing to seek the relief requested. After that, the plaintiffs filed this lawsuit, seeking judicial review of the denial of their request for administrative relief. The trial court held that the plaintiffs did not have standing to sue for declaratory relief, but did have standing under Tennessee Code Annotated § 4-5-322 to obtain judicial review of the administrative decision not to investigate the decertification of the former sheriff. Subsequently, the trial court entered a judgment in favor of the plaintiffs on this claim, remanding the case to the administrative body with instructions to hold a contested case hearing on the decertification of the former sheriff. The plaintiffs and the administrative body both appeal. We affirm in part and reverse in part, concluding that the plaintiffs do not have standing to pursue any of the relief they seek, and dismiss the case.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is
Affirmed in Part and Reversed in Part**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; and William R. Lundy, Jr., Assistant Attorney General, for the appellant, Tennessee Peace Officers Standards and Training Commission

Herbert S. Moncier, Knoxville, Tennessee, for the appellees, Bee DeSelm, Carl Seider, James Gray, Donna Brian, Mike Whalen, Susan Jerkins, Gerald Bone, Richard Held, Albert Akerman, Margo Akerman, Robert Cunningham, and Millie Cunningham

## OPINION

### FACTS AND PROCEEDINGS BELOW

In 2002, the then-Sheriff of Knox County, Defendant Timothy Hutchison "(Hutchison)", was involved in litigation with a County Commissioner in Knox County. In response to Tennessee Public Records Act requests, Sheriff Hutchison submitted statements later found by the court to be willfully false.[1] That act spawned an onslaught of public controversy and a tangled web of administrative and legal proceedings. This is the latest in the ensuing labyrinth of litigation.

### The Parties

The Defendant/Appellant Tennessee Peace Officers Standards and Training Commission ("POST Commission" or "the Commission") is an administrative body established by Tennessee's legislature. *See* T.C.A. § 38-8-101, *et seq.* (2006 & Supp. 2009). As its name implies, the POST Commission's responsibilities are related to the training and qualifications of law enforcement officers in Tennessee. *See* T.C.A. § 38-8-104. By statute, the Commission's members include two state sheriffs, police officers, citizens who are not police officers, one member from the Tennessee Senate, one member from the Tennessee House of Representatives, and the Tennessee Attorney General & Reporter. T.C.A. § 38-8-102. The powers and duties of the POST Commission are set out by statute and in the rules promulgated by the Commission, as authorized in the statutes. *See* T.C.A. § 38-8-104; *see also* POST Commission Rules and Regulations (Tennessee Compiled Rules & Regulations 1110-01-.01, *et seq.*). The statutes provide that the POST Commission "is charged with the duty of observing, administering, and enforcing all of the provisions of [the] chapter" relating to the employment and training of police officers. The statutes grant the Commission the authority "to adopt and enforce such rules and regulations as may be necessary to carry out

---

[1] The discovery requests and Public Records Act requests sought documents and information about horses and horse facilities allegedly acquired by the Knox County Sheriff's Department and related financial matters.

the provisions of [the] chapter." T.C.A. § 38-8-104(a)-(c). Under the statutes and the regulations, the POST Commission has the power to deny, suspend, or revoke the certification of law enforcement officers who do not meet the established standards. *See* Tenn. Op. Att'y Gen. No. 00-191, 2000 WL 33115961 (Tenn. A.G. 2000).

The twelve Plaintiffs/Appellees ("Plaintiffs") are "members of a partnership of publicly spirited citizens." The Plaintiffs' partnership was formed for the express purpose of addressing "alleged misdeeds or threatened wrongs by the government of Knox County and its officers." *State ex rel. DeSelm v. Owings*, No. E2008-02326-COA-R3-CV, 2009 WL 1470704, at *2 (Tenn. Ct. App. May 27, 2009); *see also State ex rel. DeSelm v. Knox County Comm'n*, No. E2008-02627-COA-R3-CV, 2010 WL 2978163, at *1, *5 (July 30, 2010).

The wrong sought to be addressed by the Plaintiffs in this case relates to the peace officer certification of former Sheriff Hutchison. Hutchison served as Knox County Sheriff from 1990 until the implementation of term limits in Knox County, in 2007, forced him to leave that position. The Plaintiffs seek to have the POST Commission revoke Hutchison's peace officer certification, or "de-certify" him. This appeal arises out of the POST Commission's refusal to grant the Plaintiffs' requests.

## Requirements for Peace Officer Certification

To understand the Plaintiffs' request of the POST Commission, some background on peace officer certification is necessary. The minimum requirements for police officers are set out in Tennessee Code Annotated § 38-8-106:

> Any person employed as a full-time police officer, and any person employed or utilized as a part-time, temporary, reserve or auxiliary police officer or as a special deputy, shall:
> (1) Be at least eighteen (18) years of age;
> (2) Be a citizen of the United States;
> (3) Be a high school graduate or possess its equivalent, which shall include a general educational development (GED) certificate;
> (4) *Not have been convicted of* or pleaded guilty to or entered a plea of nolo contendere to any felony charge or to *any violation of any federal or state laws or city ordinances relating to* force, violence, theft, *dishonesty*, gambling, liquor or controlled substances;
> (5) Not have been released or discharged under any other than honorable discharge from any of the armed forces of the United States;

(6) Have the person's fingerprints on file with the Tennessee bureau of investigation;

(7) Have passed a physical examination by a licensed physician or a nurse practitioner or physician assistant, so long as the task is expressly included in the written protocol developed jointly by the supervising physician and the nurse practitioner or physician assistant, whichever is applicable, setting forth the range of services that may be performed by the nurse practitioner or physician assistant;

(8) Have a good moral character as determined by a thorough investigation conducted by the employing agency; and

(9) Be free of all apparent mental disorders as described in the Diagnostic and Statistical Manual of Mental Disorders, Third Edition (DSM-III) of the American Psychiatric Association. An applicant must be certified as meeting these criteria by a qualified professional in the psychiatric or psychological field.

T.C.A. § 38-8-106 (emphasis added).[2]  Thus, the absence of any conviction for violation of a federal or state law related to dishonesty is an affirmative requirement under the statute for employment as a police officer.  For continued employment as a police officer, these minimum requirements must be maintained.  Section 38-8-105 classifies the act of appointing or paying a person who fails to meet the minimum standards set out in Section 38-8-106 as a Class A misdemeanor:

(a) Requirements for minimum standards as set forth in this part or as required by the commission shall be mandatory and binding upon any municipality, county or political subdivision of this state.

(b) Any person who appoints any applicant, who, to the knowledge of the appointor, fails to meet the minimum standards as set forth in this part or required by the commission, and any person who signs the warrant or check for the payment of the salary of any person who, to the knowledge of the signer, fails to meet the qualifications as a police officer as provided in this part or required by the commission, commits a Class A misdemeanor, and upon conviction shall be subject to a fine not exceeding one thousand dollars ($1,000).

T.C.A. § 38-8-105(a), (b).

---

[2]It is undisputed that these requirements apply to the positions of sheriff and deputy sheriff.  *See* T.C.A. § 8-8-102(9)(A) (2002 & Supp. 2009).

Consistent with Section 38-8-106, POST Commission Rule 1110-02-.04 provides that the Commission may suspend or revoke the certification of any law enforcement officer who is convicted of violating a state or federal law relating to dishonesty:

> (2) Suspension or Revocation of Certification.  The Commission may initiate disciplinary action upon receipt of a complaint or on its own initiative. Complaints received by POST Commission are to be documented and if allegations are warranted, the proper investigating authority will be notified, and the proper action taken (T.C.A. §§ [sic] 38-8-104(b) [establishing the Commission's authority over enforcement]).
>> (a) Grounds for Suspension or Revocation. The Commission may suspend or revoke the certification of any officer who shall, subsequent to certification under these Rules:
>> .   .   .
>> 2. *Be convicted of* or plead guilty or enter a plea of nolo contendere to any felony charge or to *any violation of any federal or state laws or city ordinances relating to* force, violence, theft, *dishonesty*, gambling, liquor and other alcoholic beverages, controlled substances, *or a sufficient number of misdemeanors to establish a pattern of disregard for the law . . . .*

Tenn. Comp. R. & Regs 1110-02-.04(2)(a)(2) (2010) (emphasis added).  The POST Commission Rule adds that certification may be revoked upon conviction of "a sufficient number of misdemeanors to establish a pattern of disregard for the law."  Under this Rule, the Commission may initiate disciplinary action on its own initiative or "upon receipt of a complaint."  The Rule neither describes nor limits who may file such a complaint.  However, it specifies that complaints are to be documented and "if allegations are warranted," the Commission is to take "proper action."  *Id.*; *see also* Tenn. Op. Att'y Gen. No. 00-191.

### Hutchison Found in Criminal Contempt of Court

In 2001, Knox County Commissioner Wanda Moody ("Moody") made a request under the Tennessee Public Records Act for numerous documents in the possession of then-Sheriff Hutchison.  *See* T.C.A. § 10-7-503 (Supp. 2009).  Hutchison responded to the request by providing some, but not all, of the requested documents.

In January 2002, Moody filed a Petition for Access to Public Records in the Knox County Chancery Court.[3]  *See Moody v. Hutchison*, 159 S.W.3d 15, 17 (Tenn. Ct. App. 2004). Hutchison still did not produce all of the responsive documents in his possession, and he submitted written responses that were demonstrably false.  Eventually, Moody filed a contempt petition, seeking to have  Hutchison held in contempt of court for filing numerous untruthful responses to the various document requests.  The trial court construed Moody's petition as a request that the trial court hold Hutchison in criminal contempt and conducted an evidentiary hearing on the charges.

After the hearing, the chancellor concluded that Hutchison had made "at least six" false representations in his responses that amounted to obstruction of justice in the underlying legal proceeding and, thus, were criminally contemptuous.  In an order dated February 12, 2003, the chancery court made six separate findings of criminal contempt against Hutchison and imposed upon him the maximum fine of $50 for each offense, for a total of $300.  *Id.* at 22-25.  The chancery court's findings and the fines imposed were affirmed by this Court on appeal.  *Id.* at 26.

## 2003 Decertification Complaint to POST Commission

Soon after the Knox County Chancery Court held Hutchison in criminal contempt, a letter of complaint was sent to the POST Commission by a Knox County citizen, asserting that in light of the criminal contempt findings, Hutchison's certification as a peace officer should be "revoked," and that he should be disqualified to serve as Sheriff of Knox County.[4]  The complaint maintained that Hutchison's criminal contempt convictions amounted to conviction of a crime relating to dishonesty under the POST Commission rules.[5]  Similar complaints were later filed with the POST Commission raising the same concerns.[6]

On April 11, 2003, the POST Commission held a meeting at which the members discussed the complaints against Hutchison.  Much of the discussion centered on whether the six criminal contempt convictions were grounds to decertify him based on Rule 1110-02-.04 or

---

[3]The trial judge was Chancellor Daryl Fansler.

[4]There is no indication in the appellate record that the letter of complaint that is the subject of the 2003 POST Commission proceedings was sent by any of the Plaintiffs in the instant case.

[5]The complaint cited Tenn. Comp. R. & Regs. 1110-02-.04.

[6]When the original complaints were filed, Hutchison was a member of the POST Commission.  By the date of the POST Commission meeting, at which the complaints against Hutchison were considered, Hutchison was no longer a Commission member.

Section 38-8-106(4). Ultimately, the Commission decided to seek an opinion from the Attorney General as to "[w]hether a finding of criminal contempt by a civil court may be considered a conviction of a 'violation of any federal or state laws or city ordinance relating to force, violence, theft, [or] dishonesty . . .' as set forth under Tenn. Code Ann. § 38-8-106(4) . . . ." The Commission deferred substantive consideration of the complaints on Hutchison pending the receipt of such an opinion.

On May 27, 2003, the Attorney General issued Opinion No. 03-071, in which the Attorney General's office opined that a finding of criminal contempt in a civil matter "may not be considered a criminal conviction for the violation of a law relating to force, violence, theft, or dishonesty" within the meaning of either Tenn. Code Ann. § 38-8-106(4) or Rule 1110-02-.04. The Attorney General opinion noted that Tennessee Code Annotated § 29-9-102, the statute establishing the scope of a court's power to inflict punishments for contempt of court, did not include an element of "force, violence, theft, or dishonesty" as a requirement for a finding of criminal contempt. *See* T.C.A. § 29-9-102. The opinion commented, however, that the conduct that serves as the basis for the finding of criminal contempt might involve "force, violence, theft, or dishonesty" and might be punishable as a separate offense, even though "a conviction of criminal contempt under Tenn. Code Ann. § 29-9-102 itself does not include any such element."

On June 27, 2003, after the POST Commission received Attorney General's Opinion No. 03-071, a sub-committee of the Commission held a meeting to discuss the complaints on Hutchison. After some discussion,[7] the sub-committee voted to deny the request to decertify

_____

[7]The discussion at the POST Commission sub-committee meeting was reflective of the schism in the discourse about Hutchison. As the sub-committee began its consideration of the complaints on Hutchison, Commissioner Carlton Carneal stated:

> I would like to address this issue. In the 16-1/2 years I have served on this Commission this is the biggest bunch of bologna I have ever seen. This Commission was not established as a place to air dirty laundry because of squabbles amongst Police Departments. The initial letter that was sent in was something that was intended without a doubt to discredit the honorable Sheriff of Knox County, Tim Hutchison, who served on this Commission for approximately eight years. . . . This is not a court of law. . . . What I am saying it is wrong it should have never been before this Commission.

In response, Commissioner Verna Wyatt stated:

> I think when community members write in with a complaint, it is our responsibility to look into it, and I have got to say, . . . I don't know the Sheriff I have never met him, . . . but when I read what the Chancellor wrote, I was very disturbed, because this is a Chief Law

(continued...)

-7-

Hutchison, based on the Attorney General's opinion. The matter was not pursued further at that time.

## 2007: Hutchison Term-Limited, Then Appointed Deputy Sheriff

After Sheriff Hutchison weathered the controversy over the contempt convictions, the "term limits" charter amendment adopted by the voters of Knox County came to affect Hutchison's service as Sheriff of Knox County.

Since 1990, Knox County has operated under an Article VII alternative form of county government, a "Home Rule" charter. *See Jordan v. Knox County*, 213 S.W.3d 751, 757 (Tenn. 2007). In 1994, pursuant to voter initiative, the voters of Knox County voted overwhelmingly in favor of a referendum to amend the Knox County Charter to limit Knox County elected officials to no more than two consecutive terms.[8] In 1995, however, Tennessee's Attorney General issued an opinion that called into question whether a county could constitutionally impose term limits on its elected officials. The matter was not brought to a head at that time. In reliance on the Attorney General's opinion, for many years, the Knox County Election Commission and other Knox County officials refused to enforce the term limits charter provision against Knox County elected officials, including Hutchison. This remained the situation in August 2006, when Hutchison was re-elected to his fifth term as Knox County Sheriff for the term beginning September 1, 2006. *Id.* at 759.

On January 12, 2007, the Tennessee Supreme Court issued its decision in *Jordan v. Knox County*. In *Jordan*, the Court held that the term limit provision in the Knox County Charter was valid, and that the offices to which it applied included that of the Knox County Sheriff. *Jordan*, 213 S.W.3d at 784; *see also Bailey v. County of Shelby*, 188 S.W.3d 539 (Tenn. 2006) (holding that Shelby County's Term Limits on its Mayor and Commission members was constitutional). Because term limits go to a candidate's qualifications for holding office, it followed that numerous elected officials, including Hutchison, were deemed ineligible for

---

[7](...continued)
> Enforcement Officer and he had six counts of contempt, lying, and that concerned me . . . . That is not a good thing for a Chief Law Enforcement Officer to be involved in.

[8]According to the amendment, "Effective January 1, 1995, no person shall be eligible to serve in any elected office of Knox County if during the previous 2 terms of that office, the person in question has served more than a single term." Charter of Knox County, Tennessee, art. VIII, § 8.17, *quoted in Jordan v. Knox County*, 213 S.W.3d 751, 757 (Tenn. 2007).

another term.[9]  *Id.* at 779, 784.  Therefore, Hutchison's 2006 election was in effect deemed void.  *See Comer v. Ashe*, 514 S.W.2d 730, 741 (Tenn. 1974).

Keenly aware of the sweeping effect of its decision, the *Jordan* Court noted that, under Tennessee's Constitution, the affected Knox County officials would remain in office until a successor was elected or appointed.  *Jordan*, 213 S.W.3d at 784.  In Hutchison's case, his successor was appointed by the Knox County Commission.  To that end, on January 31, 2007, the Knox County Commission met to appoint interim replacements for the twelve term-limited elected officials, eight of whom were members of the Knox County Commission itself.[10]

To replace Hutchison, the County Commission appointed James "J. J." Jones, a long-time employee of the Sheriff's Department, to the position of Knox County Sheriff.  Immediately after this appointment, Jones appointed Hutchison to the office of Deputy Sheriff.

Meanwhile, in the November 2006 election, Knox County voters had amended the Charter yet again, this time to adopt enhanced retirement benefits for law enforcement officers, known as the "Uniformed Officers Pension Plan."  The Charter amendment was for "sworn officers regularly employed by the Sheriff's Department."  The enhanced Uniformed Officers Pension Plan was set to become effective on July 1, 2007.  Sheriff Jones' appointment of Hutchison as Deputy Sheriff, and the effect of the appointment on whether Hutchison would qualify for the enhanced benefits under the Uniformed Officers Pension Plan, would provide the impetus for the litigation to follow.

---

[9]The positions that were term-limited included eight county commission seats and the offices of Sheriff, Register of Deeds, Trustee, and County Clerk.  *See State ex rel. DeSelm v. Knox County Comm'n*, No. E2008-02627-COA-CV, 2010 WL 2978163, at *1 (Tenn. Ct. App. July 30, 2010).

[10]The Knox County Commission meeting that was held in the wake of the Supreme Court's opinion in *Jordan* was referred to in another opinion by this Court: "The aforementioned county commission meeting of January 31, 2007, at which interim replacements for the twelve term-limited officers were appointed, has become popularly known as 'Black Wednesday.'" *State ex rel. DeSelm v. Knox County*, No. E2007-00913-COA-R3-CV, 2008 WL 3896763, at *4 (Tenn. Ct. App. Aug. 22, 2008).  One journalist summarized the actions of the Commission as follows: "At curtain's close, the 12 appointments included the son of one outgoing commissioner, the wife of another outgoing commissioner, the father of a sitting commissioner, a top aide to the politically muscular sheriff, and a businessman who years earlier had come out on the wrong end of a sexual harassment suit." *See* BACKROOM POLITICS IS BROUGHT TO THE PEOPLE, AND THE PEOPLE STEP IN, Dan Barry, *The New York Times* (Feb. 4, 2008), at http://www.nytimes.com/2008/02/04/us/04land.html (last visited Sept. 15, 2010).  All of these appointments were eventually invalidated in yet another separate lawsuit, as being in violation of Tennessee's Open Meetings Act.  *See State ex rel. DeSelm v. Knox County Comm'n*, 2010 WL 2978163, at *8.

## DeSelm I

Soon after Sheriff Jones appointed Hutchison as Deputy Sheriff, the Plaintiffs became convinced that the primary purpose of the appointment was to enable Hutchison to qualify for the enhanced retirement benefits available under the Uniformed Officers Pension Plan. They asserted that if Hutchison were allowed to remain a Deputy Sheriff for five months until the scheduled effective date of the Plan, July 1, 2007, and Hutchison thereafter retired as expected, Knox County taxpayers would be obliged to pay Hutchison a substantial percentage of his salary, amounting to some $83,000 per year, or a total of $1,660,000 over a life expectancy of twenty years, and that such a result would be unjust.[11] Consequently, the Plaintiffs commenced efforts to have Hutchison decertified as a law enforcement officer.[12] The decertification efforts were premised on the assertion that, contrary to the earlier Attorney General's opinion, the 2002 findings of criminal contempt against Hutchison amounted to a conviction relating to dishonesty under POST Commission Rule 1110-02-.04, and thus constituted a basis for decertification.

To that end, on February 22, 2007, the twelve Plaintiffs in the instant case[13] filed their first lawsuit in the Davidson County Chancery Court, a petition for declaratory judgment pursuant to Tennessee Code Annotated § 29-14-101, *et seq*. Named as defendants were the POST Commission, Hutchison, the Tennessee Attorney General, and the Knox County Mayor. The petition sought a declaration that Hutchison was no longer qualified to be a Tennessee certified law enforcement officer and Deputy Sheriff for Knox County due to the six findings of criminal contempt in 2002. *See State ex rel. DeSelm v. Tenn. Peace Officers Standards Comm'n*, No. M2007-01855-COA-R3-CV, 2008 WL 4614523, at *1 (Tenn. Ct. App. Oct. 16, 2008) ("*DeSelm I*"). The Plaintiffs' petition also asserted claims based on ouster, mandamus, and a violation of the Little Hatch Act, Tennessee Code Annotated § 2-19-201, *et seq*. *Id.* The defendants in *DeSelm I* filed a motion to dismiss the complaint, asserting that the Plaintiffs had failed to state a claim, that venue was improper, that the Plaintiffs did not have standing to assert the ouster and Little Hatch claims, and that the case was barred by the doctrine of prior case pending, by *res judicata*, and by estoppel. *Id.*

On May 30, 2007, the trial court, Chancellor Ellen Hobbs Lyle presiding, issued a Memorandum and Order dismissing the claims against the Knox County Mayor, the Attorney

---

[11]The record does not include information on the retirement benefits Hutchison would receive without the enhanced benefits under the Uniformed Officers Pension Plan.

[12]Whether decertification of Hutchison as a peace officer would actually affect his pension benefits is disputed, as explained below.

[13]Gloria Dessert was also a named plaintiff in *DeSelm I*, but she is not a named plaintiff in the instant case.

General, and Hutchison, based on improper venue, failure to state a claim, lack of standing, and sovereign immunity. *Id.* at *2. The trial court explained that the claims against the Mayor and Hutchison were localized in Knox County, and that venue for an action against these parties was improper in Davidson County. The trial court held that the Plaintiffs did not have standing to bring an ouster or Little Hatch claim, because those statutes provided only for criminal penalties, and thus, legal proceedings under those statutes could be instituted only by the Attorney General. The trial court also concluded that claims against the Attorney General were barred under the doctrine of sovereign immunity. *Id.*

As to the Plaintiffs' claims against the POST Commission, the trial court acknowledged that the doctrine of sovereign immunity prohibits lawsuits against a state agency such as the Commission. It found, however, that sovereign immunity had been waived as to the POST Commission through the promulgation of POST Commission Rule 1110-02-.04, which authorizes citizens to file complaints with the POST Commission regarding the decertification of peace officers, and also through the Uniform Administrative Procedures Act ("UAPA") declaratory judgment and order provisions, Tennessee Code Annotated §§ 4-5-224; 4-5-225. The trial court reasoned that, if the POST Commission acts arbitrarily, illegally, or fraudulently, or if it abuses its discretion with respect to complaints filed by citizens, then its actions would be subject to a writ of certiorari. The trial court noted that the Plaintiffs had neither filed an administrative complaint pursuant to Rule 1110-02-.04, nor a petition for a declaratory judgment with the POST Commission. Consequently, the trial court found, the Plaintiffs had not exhausted their administrative remedies.

Both the POST Commission and the Plaintiffs responded to the Chancellor's decision. Citing the POST Commission's 2003 decision against decertifying Hutchison, the Plaintiffs argued that seeking an administrative remedy would be pointless. The POST Commission, on the other hand, argued that, based on its 2003 decision, the Plaintiffs were precluded from filing an administrative complaint or petition for declaratory order with the POST Commission based on principles of *res judicata* or collateral estoppel.

The trial court disagreed with both positions, noting that the circumstances had changed since 2003. The trial court explained that the POST Commission's 2003 decision not to decertify then-Sheriff Hutchison was premised on an incorrect application of the law, namely, the "questionable" opinion expressed in Attorney General Opinion No. 03-071. The trial court reasoned:

> The scope of the decertification rule is broader than determined by the
> Attorney General. The stated scope of the rule extends to crimes "relating to"
> dishonesty; the rule does not narrowly require, as the Attorney General opines,
> that dishonesty must be an actual element of the crime. Thus, the nature of a

-11-

crime or charge should be evaluated in light of the underlying facts, which in this case requires looking to the opinions issued by the Knox County Chancellor and the Court of Appeals.

The trial court observed that Hutchison's convictions for criminal contempt were based on dishonest statements that "went beyond falsehoods; they were designed to impede the processes of the court. It is difficult to see how such misconduct . . . does not qualify as a violation of a state law related to dishonesty." (Citation omitted). Therefore, the trial court found that the preliminary evidence showed "that the 2003 decision of the POST Commission was not correct as a matter of law." On this basis, the chancery court found that the Plaintiffs had available to them an administrative remedy with the POST Commission, and that it did not have jurisdiction over the Plaintiffs' claims against the POST Commission due to their failure to exhaust their administrative remedies. Thus, all of the Plaintiffs' claims were dismissed.

The trial court's ruling prompted the Plaintiffs to immediately file three letter complaints with the POST Commission. In the first letter, dated May 30, 2007, the Plaintiffs asked the POST Commission to "hold a special meeting on or before June 15, 2007 and that Timothy Hutchison be decertified as a law enforcement officer" based on the findings of criminal contempt. The next day, the Plaintiffs sent a second letter to the POST Commission seeking declaratory relief "pursuant to T.C.A. § 4-5-225(b)[14] for a declaration by P.O.S.T. that the convictions of Timothy Hutchison submitted to P.O.S.T. by [Plaintiffs'] letter of May 30, 2007 constitute offenses 'relating to dishonesty' within the meaning of T.C.A. § 38-8-104(4) and P.O.S.T. regulation 1110-2-.04(2)(a)(2)." The letter informed the Commission that time was of the essence because of the impending effective date of the new enhanced pension plan, July 1, 2007. The next day, on June 1, 2007, the Plaintiffs sent the POST Commission

---

[14]Sections (a) and (b) of the statute provide:

(a) The legal validity or applicability of a statute, rule or order of an agency to specified circumstances may be determined in a suit for a declaratory judgment in the chancery court of Davidson County, unless otherwise specifically provided by statute, if the court finds that the statute, rule or order, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the complainant. The agency shall be made a party to the suit.

(b) A declaratory judgment shall not be rendered concerning the validity or applicability of a statute, rule or order unless the complainant has petitioned the agency for a declaratory order and the agency has refused to issue a declaratory order.

T.C.A. § 4-5-225(a), (b) (2005).

a third letter seeking similar declaratory relief pursuant to Tennessee Code Annotated § 29-14-103[15] that was "separate and apart" from the action filed pursuant to POST Commission Rule 1110-02-.04. On June 4, 2007, the POST Commission sent the Plaintiffs a letter stating that all of their requests would be considered at its June 15, 2007 meeting.

Meanwhile, in the chancery court action, on June 1, 2007, the Plaintiffs filed a motion to set aside the May 30, 2007 dismissal of its claims against the POST Commission for failure to exhaust, on the basis that the Plaintiffs had begun to pursue their administrative remedies. On June 4, 2007, the chancery court denied the Plaintiffs' motion to alter or amend. In the order, however, the chancery court added that, if the POST Commission "refuse[d] to consider the matter or act, or commits error in its response to the plaintiffs' request for expedited relief, this Court has jurisdiction under section 4-5-322(a)(1) of immediate review of a preliminary or procedural agency action if reviewing the final agency decision would not provide an adequate remedy." On June 15, 2007, the Plaintiffs filed a motion to renew their motion to alter or amend the May 30, 2007 order. *Id.* This was denied as well. The Plaintiffs then filed the *DeSelm I* appeal to this Court.

---

[15]That statute provides that any person "affected by" a statute may obtain a declaration of his rights under the subject statute:

> Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder.

T.C.A. § 29-14-103 (2000).

During the chancery court proceedings and the pendency of the ensuing ***DeSelm I*** appeal, the Plaintiffs continued to pursue their administrative remedies. At the scheduled June 15, 2007 POST Commission meeting, the Plaintiffs' three letters were presented and discussed. Although the POST Commission does not typically permit complainants or counsel for complainants to argue before the Commission during its initial consideration of a citizen complaint, an exception was made and counsel for the Plaintiffs, Herbert S. Moncier ("Moncier"), was permitted to attend the meeting and argue on behalf of the Plaintiffs. At the meeting, the POST Commission treated the Plaintiffs' May 30, 2007 letter as a request for emergency relief pursuant to Tennessee Code Annotated § 4-5-320(c),[17] because the relief requested was that Hutchison be decertified "on or before June 15, 2007." The Plaintiffs' other two letters were treated as requests for declaratory relief pursuant to Tennessee Code

---

[16]We have labored in vain to find an understandable shorthand manner of distinguishing among the numerous separate lawsuits stemming from the public controversies referred to in this Opinion, many of which are styled similarly. For example, in ***State ex rel. DeSelm v. Knox County***, No. E2007-00913-COA-R3-CV, 2008 WL 3896763 (Tenn. Ct. App. Aug. 22, 2008), another panel of this Court considered a complaint regarding the validity of the Knox County Charter, and referred to that Knox County case as ***DeSelm I*** and another related Knox County case as ***DeSelm II***. ***Id.*** at *3. We acknowledge that these are different from the ***DeSelm I*** and ***DeSelm II*** to which we refer in this Opinion, both of which were filed in Davidson County. Notably, the Plaintiffs herein claim to have filed at least eighteen lawsuits "against various and sundry defendants, including Knox County and county officers." ***Owings,*** 2009 WL 1470704, at *2. The Plaintiffs attempt to distinguish between the proceedings by reference to the county in which they were brought. In our view, however, using such a distinction is more confusing than descriptive. Indeed, trying to differentiate among the various lawsuits may be likened to trying to distinguish among the heads of the mythological hydra.

[17]Section (c) of the statute provides:

> (c) No revocation, suspension, or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gave notice by mail to the licensee of facts or conduct that warrant the intended action, and the licensee was given an opportunity to show compliance with all lawful requirements for the retention of the license. If the agency finds that public health, safety, or welfare imperatively requires emergency action, and incorporates a finding to that effect in its order, summary suspension of a license may be ordered pending proceedings for revocation or other action. These proceedings shall be promptly instituted and determined.

T.C.A. § 4-5-320(c) (2005).

Annotated § 4-5-223,[18] in effect asking the POST Commission to apply its rules to the facts of Hutchison's case.

After discussion, the POST Commission determined that emergency decertification or suspension of certification was not warranted because (1) the same argument had been presented and rejected in 2003, and (2) an affidavit from a Knox County Pension Board representative stated that whether Hutchison remained certified as a peace officer would have no effect on whether he could participate in the new enhanced pension plan.[19] Regarding the request for declaratory relief, having determined that emergency relief was not mandated, the Commission proposed holding a contested case hearing on the matter on August 16, 2007. The Plaintiffs' counsel argued that such a delay would be a denial of justice, because the new pension plan would become effective on July 1, 2007, and the Plaintiffs expected Hutchison to retire or resign soon after he qualified for the enhanced pension benefits. The Commission

---

[18]This statute provides in pertinent part:

> (a) Any affected person may petition an agency for a declaratory order as to the validity or applicability of a statute, rule or order within the primary jurisdiction of the agency. The agency shall:
>
>> (1) Convene a contested case hearing pursuant to the provisions of this chapter and issue a declaratory order, which shall be subject to review in the chancery court of Davidson County, unless otherwise specifically provided by statute, in the manner provided for the review of decisions in contested cases; or
>>
>> (2) Refuse to issue a declaratory order, in which event the person petitioning the agency for a declaratory order may apply for a declaratory judgment as provided in § 4-5-225.
>
> (b) A declaratory order shall be binding between the agency and parties on the state of facts alleged in the petition unless it is altered or set aside by the agency or a court in a proper proceeding.
>
> (c) If an agency has not set a petition for a declaratory order for a contested case hearing within sixty (60) days after receipt of the petition, the agency shall be deemed to have denied the petition and to have refused to issue a declaratory order.

T.C.A. § 4-5-223(a)-(c) (2005).

[19]The affidavit of the Knox County Pension Board representative was unrebutted in the record before the POST Commission, save for the argument of the Plaintiffs' counsel to the contrary.

was unpersuaded and voted to convene a declaratory order contested case hearing pursuant to Tennessee Code Annotated § 4-5-223(a)(1) on August 16, 2007.

Immediately after the POST Commission's June 15, 2007 meeting, on the same day, the Plaintiffs filed the *DeSelm II* lawsuit in the Davidson County Chancery Court against the POST Commission. The *DeSelm II* lawsuit sought judicial review of the POST Commission's refusal to suspend Hutchison's certification on an emergency basis, pending its August 2007 contested case hearing. This second lawsuit was assigned to Chancellor Lyle as well.[20] On June 28, 2007, Chancellor Lyle granted the requested relief and ordered the temporary suspension of Hutchison's certification, pending the POST Commission's August 16, 2007 contested case hearing.[21] The Chancery Court entered a subsequent order clarifying that its suspension of Hutchison's certification was temporary in nature, pending the August 16, 2007 POST Commission decertification hearing. The trial court stated that, at the conclusion of the hearing, the POST Commission was to decide whether to convert the trial court's temporary suspension to permanent decertification by the Commission, or whether to deny decertification, thereby dissolving the temporary suspension issued by the trial court.[22] The trial court's decision in *DeSelm II* was apparently not appealed.

### Administrative Proceedings

On June 29, 2007, a notice of hearing was filed by the Tennessee Department of Commerce and Insurance ("TDCI") with the Administrative Procedures Division of the Secretary of State's Office, noticing the contested case hearing on Plaintiffs' request for declaratory relief for August 16, 2007. The Administrative Procedures Division assigned the matter to Administrative Judge Mary M. Collier ("Admin. Judge Collier").

After the notice of hearing was filed, several pre-hearing motions were filed by parties who asserted an interest in the contested case. The Plaintiffs propounded discovery requests to the POST Commission and to Hutchison, asking that they be required to respond by July 17, 2007, in order to allow time for a reply before the scheduled hearing. Attorneys for TDCI,

---

[20]The second lawsuit was initially assigned to a different part of the chancery court, but was subsequently transferred to Chancellor Lyle based on her involvement in the previous case. Although the Plaintiffs sought to consolidate the second lawsuit with the first, that motion was denied.

[21]At the trial court hearing, counsel for Hutchison made a special appearance and informed the trial court that Sheriff Jones had reassigned Hutchison to a position that apparently did not require certification as a peace officer, and emphasized that his certification had no bearing on his retirement.

[22]Plaintiffs also requested that the trial court in *DeSelm II* enter an order prohibiting any Knox County official from processing or approving of pension benefits for Hutchison. The trial court denied this relief.

the Tennessee Attorney General, and Hutchison all filed motions to dismiss.[23]  These motions resulted in telephonic hearings before Admin. Judge Collier on July 17 and July 23, 2007.

On July 27, 2007,[24] Admin. Judge Collier executed an order designating the proper parties in the case.  The Plaintiffs' attorney, Moncier, had been initially misidentified as the Petitioner; Admin. Judge Collier granted his request to identify the Plaintiffs as the Petitioners.  Because the TDCI challenged the Plaintiffs' standing to pursue an action for a declaratory order or a contested case regarding decertification, the TDCI was identified as a Respondent.  Because the Plaintiffs sought decertification of Hutchison, and because his certification had already been temporarily suspended in *DeSelm II*, Hutchison was also named as a Respondent in the administrative proceedings.  Once Admin. Judge Collier resolved these matters, she recused herself from the case because she had been employed with the Attorney General's office in 2003.  The case was reassigned to Administrative Judge Randall LaFevor.

Based on his review of the record, on August 3, 2007, Admin. Judge LaFevor executed an order dismissing the Plaintiffs' petition for declaratory relief.[25]  A copy of that order was sent by fax to the Plaintiffs' attorney on that same day.  Admin. Judge LaFevor dismissed the Plaintiffs' petition based on his conclusion that they did not have standing.  He rejected the Plaintiffs' assertion that they were "affected person[s]" under Tennessee Code Annotated § 4-5-223(a) based upon their status as Knox County taxpayers.  Admin. Judge LaFevor noted that, under the regulations of another state agency, the term "affected person" is defined as someone "upon whom a statute, rule or order produces *a specific and direct* effect or result."[26]  Tenn. Comp. R. & Regs. 1200-10-.11(3) (emphasis added).  He cited numerous appellate court decisions as well.  Admin. Judge LaFevor explained that the alleged harm to the Plaintiffs, *i.e.* higher taxes resulting from the failure to decertify a law enforcement officer, is not the type of connection required to establish standing:

> In general practice, the affected persons who petition for Declaratory Orders
> are those whose activities are authorized or regulated by the agency (e.g.

---

[23]These motions were not included in the record on appeal.  They are alluded to, however, in the orders filed by the administrative judges involved in this case.

[24]Though apparently executed earlier, the order was filed on August 1, 2007.

[25]Some evidence in the record indicates that the order was executed on August 7, 2007.

[26]Admin. Judge LaFevor recognized that the definition of the term "affected person" by another state agency would not be controlling on the POST Commission, but found that the definition reflected the common usage of the term in the context of administrative proceedings.

-17-

agency licenses, certificate holders, etc.).  They are persons "upon whom a statute, rule or order produces a specific and direct effect or result;" as opposed to persons, like the Petitioners in this case, over whom the agency has no authority or jurisdiction.  The POST Commission has no authority to impose, alter or amend tax laws, or to directly affect the taxation of the citizens of Knox County.  Additionally, it has no authority to award a retirement benefit to police officers, or to increase or decrease the amount of a retirement benefit conferred by Knox County or any other governmental entity.  In short, the POST Commission exercises no powers or duties that could lead to a "specific or direct effect or result" to the claimed interests of the Petitioners.

(Footnote omitted).  Thus, Admin. Judge LaFevor concluded, the Plaintiffs' status as taxpayers was insufficient to establish standing to seek declaratory relief "when they have shown no specific and direct connection to the agency."

After disposing of the Plaintiffs' claims for declaratory relief, Admin. Judge LaFevor went further and offered a recommendation.  Admin. Judge LaFevor noted that the POST Commission had not fully addressed the Plaintiffs' May 30, 2007 letter of complaint requesting Hutchison's decertification; it had concluded that *summary* suspension of Hutchison's certification was not warranted but had not yet addressed the underlying complaint seeking permanent revocation of Hutchison's certification.  Admin. Judge LaFevor observed that the POST Commission was required to follow Rule 1110-02-.04(2)(a)(2), which states that "[c]omplaints received by POST Commission are to be documented and if allegations are warranted, the proper investigating authority will be notified, and the proper action taken." Because the POST Commission had taken no "follow-up action" on the complaint, Admin. Judge LaFevor recommended that the POST Commission "reconsider" that complaint "and take such further action as may be required by the POST Commission Rules and Regulations."  Admin. Judge LaFevor acknowledged that he had no authority to order the POST Commission to take action related to the Plaintiffs' May 30, 2007 complaint, because only the Plaintiffs' complaint for declaratory relief was at issue in the contested case, but nevertheless offered his recommendation in the interest of promoting a full resolution of the case.  The order issued by Admin. Judge LaFevor became final on August 22, 2007.

By letter to the POST Commission dated August 10, 2007, Moncier, on behalf of the Plaintiffs, inquired about whether the Plaintiffs' complaint seeking Hutchison's decertification would be heard on August 16, 2007, as the POST Commission originally scheduled.  If so, Moncier requested that the Commission send him a copy of the full agenda for the meeting.  In two letters dated August 14, 2007, a representative of the TDCI informed Moncier that the POST Commission's contested case hearing scheduled for August 16, 2007 had been cancelled in light of Admin. Judge LaFevor's ruling, and that "all that exists is a

complaint that has not been acted on by the Commission." The TDCI representative indicated, however, that the POST Commission intended to reconsider the Plaintiffs' May 30, 2007 complaint for decertification, as is required under POST Commission Rule 1110-02-.04(2). The next day, the TDCI representative sent Moncier another letter; this letter informed him that the matter would be considered by the POST Commission on August 17, 2007. The letter explained that, although the POST Commission did not typically permit complainants or counsel for complainants to provide input or make presentations before the Commission in the course of its consideration of a complaint, it would nevertheless permit counsel for the Plaintiffs to submit a two-page written summary for consideration at the August 17, 2007 meeting.[27] The record indicates that the Plaintiffs' counsel did not submit such a summary for the Commission's consideration.

On August 17, 2007, the POST Commission conducted the meeting as scheduled. The appellate record contains a transcript of those proceedings. Present at the meeting were fourteen POST Commission members, five POST Commission staff members, and three staff attorneys for the TDCI. The issue before the members was whether to dismiss the complaint at the meeting or refer the complaint for investigation and further action.[28] After deliberations, the POST Commission voted to dismiss the complaint. Its dismissal was based on the fact that the Commission had made a decision on decertification of Hutchison in 2003, in reliance on Attorney General Opinion No. 03-071, and no factual changes had occurred since that time.[29] It was also based on evidence that Hutchison had already retired and decertifying him would have no effect on his retirement benefits. One Commissioner commented, "He is retired now and it's a moot point." The POST Commission therefore voted to dissolve the Chancery Court's temporary suspension of Hutchison's certification in *DeSelm II*.

---

[27]The TDCI representative explained in a previous letter that complaints were ordinarily presented to the POST Commission "anonymously in order to prevent any prejudice . . . ."

[28]Actually, the POST Commission had under consideration two complaints against Hutchison, the one filed by the Plaintiffs and one filed by two other citizens around the same time; both asserted that the criminal contempt convictions left Hutchison no longer qualified to serve as a peace officer.

[29]The POST Commission apparently did not have before it the Knox County Chancery Court order finding Hutchison in criminal contempt of court, but was aware that the penalty imposed on Hutchison was a $300 fine. The fact that only a $300 fine was levied against Hutchison was interpreted by Commission members as an indication that the offense was not of the most serious nature.

## DeSelm III

On October 4, 2007, the Plaintiffs filed the instant lawsuit against the POST Commission and Hutchison (collectively, "Defendants") in the Davidson County Chancery Court below ("*DeSelm III*"). This third lawsuit was assigned to Chancellor Lyle as well. In Count I, the Plaintiffs sought a declaration that the POST Commission's 2003 ruling was legally erroneous, that Hutchison's convictions for criminal contempt amounted to convictions for violation of a state law related to dishonesty within the meaning of Tennessee Code Annotated § 38-8-106(4) and that, therefore, Hutchison was no longer qualified to be a certified law enforcement officer.[30] Counts II and III of the Plaintiffs' complaint asserted that, because there was no investigation into Hutchison's moral character prior to his appointment as deputy sheriff, and because he did not actually have good moral character when he was appointed, he was not qualified to serve as a law enforcement officer under Tennessee Code Annotated § 38-8-106(8). In Count IV, Plaintiffs sought a declaration that the effective date of Hutchison's disqualification from holding office related back to the dates of the disqualifying events, all of which took place on or before January 31, 2007. Because he was not qualified under these provisions, the Plaintiffs asserted, Hutchison could not lawfully claim any benefit as a law enforcement officer after January 31, 2007.

In Count V of the Plaintiffs' complaint, they requested judicial review of the POST Commission's August 17, 2007 denial of the Plaintiffs' request for a contested case hearing to consider the decertification of Hutchison. In Count VI, the Plaintiffs sought judicial review of Admin. Judge LaFevor's order dismissing the Plaintiffs' claims for declaratory relief.

On November 28, 2007, the Defendants filed a motion to sever and dismiss Counts I through IV, and to consolidate Counts V and VI as a single petition for judicial review pursuant to Tennessee Code Annotated § 4-5-322. On December 7, 2007, the administrative record was filed in the Chancery Court. On March 13, 2008, the Defendants filed a motion to dismiss Counts V and VI of the Plaintiffs' complaint for lack of standing, because the Plaintiffs were not "aggrieved parties" within the meaning of Tennessee Code Annotated § 4-5-322.

---

[30]The Plaintiffs also alleged that Hutchison violated Tennessee Code Annotated § 38-8-310, which prohibits law enforcement officers from engaging in political activity, supporting or opposing a political candidate in any election. In addition, the Plaintiffs pointed out that "[a]ny person who appoints any applicant, who, to the knowledge of the appointor, fails to meet the minimum standards as set forth [in chapter 8] or as required by the [POST Commission]" commits a Class A misdemeanor, apparently referring to Sheriff Jones. T.C.A. § 38-8-105(b) (2006).

On April 24, 2008, the trial court entered an order on the Defendants' motion to dismiss the Plaintiffs' complaint. At the outset, consistent with the holdings in *DeSelm I*, the trial court dismissed all of the claims against Defendant Hutchison because the Davidson County Chancery Court did not have subject matter jurisdiction over him and venue was improper because Hutchison is a Knox County resident being sued for events that occurred in Knox County.[31] Second, the trial court agreed with Admin. Judge LaFevor's finding that the Plaintiffs' status as taxpayers did not give them standing as "affected person[s]" under Tennessee Code Annotated § 4-5-223 to seek a declaratory order from the POST Commission. Third, the trial court held that sovereign immunity precludes a declaratory judgment action pursuant to Tennessee Code Annotated § 29-14-101, *et seq.*, from being brought against the State or one of its commissions. Thus, the trial court dismissed Counts I, II, II, IV, and VI of the Plaintiffs' complaint.

However, as to Count V, consistent with its holding in *DeSelm I*, the trial court held that the Commission had waived sovereign immunity with respect to the claims brought pursuant to POST Commission Rule 1110-02-.04. The trial court further held that the Plaintiffs had stated a claim for relief and had standing with respect to Count V. To reach this conclusion, the trial court allowed that it had to go through "a number of steps," and then outlined its reasoning. It noted that POST Commission Rule 1110-02-.04 "provides a process for citizen complaints" by virtue of the provision, stating that "[c]omplaints received by POST Commission are to be documented and if allegations are warranted, the proper investigating authority will be notified, and the proper action taken (T.C.A. §§[sic] 38-8-104(b))." The trial court reiterated that Attorney General Opinion No. 03-071 was erroneous, and that the POST Commission, in relying on it, had applied the wrong legal standard to the Plaintiffs' complaint. The trial court maintained that the facts demonstrated that the findings of criminal contempt against Hutchison may have been convictions of violations of state law related to dishonesty, and asserted as well that the findings of criminal contempt could have constituted "a sufficient number of misdemeanors to establish a pattern of disregard for the law." *See* Tenn. Comp. R. & Regs. 1110-02-.04(2)(a)(2). Therefore, the trial court found, the POST Commission did not take "proper action" as required under Rule 1110-02-.04.

The trial court then addressed the issue of standing and the procedural grounds for challenging in court the POST Commission's improper handling of the Plaintiffs' complaint. The trial court concluded that the Plaintiffs' complaint should be construed as a petition for writ of certiorari pursuant to Tennessee Code Annotated § 27-8-101, *et seq*. The statute, it said, "provides review of the actions of an inferior tribunal on extreme grounds: where the tribunal violates the law and there is no other plain, speedy or adequate remedy." Because

---

[31]Plaintiffs did not challenge the dismissal of the claims against Hutchison individually. Therefore, any claims against Hutchison individually are not at issue in this appeal.

the POST Commission had repeatedly denied the Plaintiffs declaratory relief and continued to adhere to its 2003 ruling, the trial court reasoned, this was "one of those unusual cases qualifying for relief under section 27-8-101, *et seq.*" Thus, the trial court held that the Plaintiffs had standing and had stated a claim to challenge the refusal of the POST Commission to investigate and decide the proper action to be taken in response to the Plaintiffs' complaint.

A few days later, on April 29, 2008, on its own initiative, the trial court changed course somewhat with respect to Count V of the Plaintiffs' complaint. The trial court noted that the Plaintiffs' complaint had not been verified and did not state that it was the first application for the writ, both of which are jurisdictional requirements for a petition for a writ of certiorari. Because the trial court had concluded previously that a writ of certiorari was the only procedure by which the Plaintiffs could challenge the actions of the POST Commission, the trial court dismissed Count V of the complaint.

In short order, the Plaintiffs filed a number of motions in the trial court. The motions filed included a motion and a supplemental motion for additional findings pursuant to Rule 52.02 of the Tennessee Rules of Civil Procedure, as well as a motion to alter or amend the April 24, 2008 order pursuant to Rule 59.04. As to the April 29, 2008 order, they filed a Rule 52.02 motion for additional findings, a Rule 59 motion to alter or amend, and a Rule 60 motion to set the order aside. Finally, the Plaintiffs filed a motion to amend their complaint to include a new Count VII, a petition for writ of certiorari, in an attempt to cure the jurisdictional defect identified by the trial court in its April 29, 2008 order. On May 30, 2008, the POST Commission filed a motion to dismiss the Plaintiffs' complaint on the basis of prior suit pending, and also filed responses to all of the other motions filed by the Plaintiffs.

On July 11, 2008, the trial court entered an order holding in abeyance all of the parties' outstanding motions pending the outcome of the appeal to this Court in *DeSelm I*.

On October 16, 2008, this Court issued its Opinion in *DeSelm I*. *State ex rel. DeSelm v. Tenn. Peace Officers Standards Comm'n*, No. M2007-01855-COA-R3-CV, 2008 WL 4614523 (Tenn. Ct. App. Oct. 16, 2008). The *DeSelm I* appellate court agreed with the trial court's conclusion that the Plaintiffs' declaratory judgment action against the Attorney General was barred by the doctrine of sovereign immunity, and held that the Plaintiffs' claims against Hutchison and the Knox County Mayor were appropriately dismissed for improper venue. *Id.* at *3-4. The appellate court also held that the Plaintiffs' claims of ouster and the claims brought pursuant to the Little Hatch Act were properly dismissed based on lack of standing. *Id.* at *3. The Plaintiffs had argued that, pursuant to *Bennett v. Stutts*, 521 S.W.2d 575 (Tenn. 1975), they had standing to bring such a suit if they showed a special

interest or special injury not common to the public generally, and that they had demonstrated such a special interest as " 'public spirited citizens' who are trying to protect local taxpayers." The *DeSelm I* Court rejected that argument, holding that, "[c]learly, this is not adequate to show a special interest or injury that is not common to the general public, as citizens of Knox County are taxpayers." *Id.*

This Court in *DeSelm I* also reviewed the trial court's denial of the Plaintiffs' Rule 59 motion for relief from the May 30, 2007 order dismissing their claims against the POST Commission for failure to exhaust administrative remedies. As noted above, the Plaintiffs' motion to set aside the dismissal was based on the fact that the Plaintiffs began to pursue their administrative remedies after the trial court indicated that they were required to do so. In affirming the trial court's decision, the *DeSelm I* Court observed that a Rule 59 motion is intended to allow a trial court to correct a mistake before a judgment becomes final, and that such relief is appropriate when (1) the controlling law changes before a judgment becomes final, (2) previously unavailable evidence becomes available, or (3) for *sui generis* reasons, a judgment should be amended to correct a clear error of law or to prevent injustice. *Id.* at *4 (citing *Vaccarella v. Vaccarella*, 49 S.W.3d 307 (Tenn. Ct. App. 2001)). Finding none of those conditions present in *DeSelm I*, the appellate court affirmed the trial court's denial of the Plaintiffs' motion for Rule 59 relief. *Id.*

After issuance of the appellate court's decision in *DeSelm I*, on March 13, 2009, the POST Commission filed an amended motion in the Chancery Court below in *DeSelm III* to dismiss the Plaintiffs' complaint, arguing that the decision in *DeSelm I* barred further claims for relief against the POST Commission based on the doctrines of *res judicata* and collateral estoppel. The POST Commission also argued that the case was moot for lack of a justiciable controversy. On March 31, 2009, the Plaintiffs filed a response, arguing that *DeSelm I* was not binding authority in *DeSelm III* because it was an unpublished opinion, that the *DeSelm I* incorrectly concluded that the Plaintiffs did not have standing, and that *DeSelm I* did not address any of the issues relied upon by the POST Commission in its motion to dismiss the *DeSelm III* action.

On May 1, 2009, the trial court entered an order on the outstanding motions. It denied the Plaintiffs' motion for relief pursuant to Rules 52, 59, and 60 with respect to Counts I, II, III, IV, and VI of the Plaintiffs' complaint.

As to Count V of the complaint, however, the trial court set aside the dismissal. The order explained the trial court's reasoning for doing so. It again reiterated its firm conclusion that Attorney General Opinion No. 03-071 was legally erroneous, and that the Plaintiffs had a stated a colorable claim in their assertion that the POST Commission erroneously relied on it. The trial court then reversed its prior ruling that Count V was, in substance, a petition for

a writ of certiorari. However, it remained convinced that the Plaintiffs' complaint to the POST Commission contained allegations that were warranted, and that the POST Commission's own rules required it to investigate such a complaint and take proper action. The trial court stated bluntly that the POST Commission had "repeatedly refused to take proper action on the plaintiffs' May 30, 2007 citizen complaint."

The trial court acknowledged that a group of citizens such as the Plaintiffs would not normally have standing to rectify wrongful acts by an agency charged with the responsibility for an individual's license or privilege. It described this case as "unusual" in the sense that the rules promulgated by the POST Commission "actually provide for citizen participation by a complaint procedure." The trial court then considered the POST Commission's "refusal" to investigate decertifying Hutchison, as well as the Plaintiffs' "second tier connection as citizens" to the POST Commission's decision with respect to two issues: (1) whether there was an appropriate legal theory for the wrong alleged by the Plaintiffs, and (2) whether the Plaintiffs had standing to assert any claim based on that wrong. It explained:

> Rectifying the incorrect interpretation of its decertification standards to Officer Hutchison's convictions for dishonesty that is at the heart of this case is confounded by the plaintiffs' second tier connection as citizens whose rights before the POST Commission are limited to filing complaints requesting POST to investigate Officer Hutchison's certification. Finding a legal theory for the plaintiffs' appeal to this Court of the POST decision not to decertify Officer Hutchison is like, to coin a phrase from Luigi Pirandello's title "Six Characters in Search of an Author," "One Court in Search of a Legal Theory." In other words, the plaintiffs' standing is a difficult issue, and for that reason the Court has wrestled with this case, at first deciding upon one legal rationale only to later find a flaw.

After studying the Plaintiffs' complaint, the appellate court decision in ***DeSelm I***, and the applicable law, the trial court in ***DeSelm III*** found "a viable legal theory for the plaintiffs." It then construed the Plaintiffs' claim as a petition for judicial review pursuant to Section 4-5-322, which provides that "[a] person who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter . . . ." Having thus characterized the Plaintiffs' claim, the trial court then concluded that the Plaintiffs qualified as "aggrieved" persons within the meaning of Section 4-5-322 of the UAPA. The trial court detailed its analysis to reach this conclusion:

> In arriving at this decision, the Court's detailed reasoning begins with that part of Tennessee Code Annotated section 4-5-322(a)(1) that provides judicial review of a final decision of an administrative agency to a "person

who is aggrieved by a final decree in a contested case." "Aggrieved" is not defined in the statute, but its meaning has been explained in case law.

In *City of Brentwood v. Metropolitan Board*, 149 S.W.3d 49 (Tenn. Ct. App. 2004), using federal case law, the court explained that "history associates the word 'aggrieved' with a congressional intent to cast the statutory net broadly – beyond the common law interest and substantive statutory rights upon which prudential standing traditionally rests." With this premise, the court held that a neighboring city, Brentwood, had standing to appeal the decision of the Davidson County Board of Zoning Appeals issuance of a building permit for a billboard in Davidson County along the corridor with Brentwood. The court also found, from identifying the purpose of the statutory scheme as stated therein, that Brentwood's interest in the case was within those sought to be protected by the zoning ordinance.

Applying the foregoing analysis to the plaintiffs in this case, the Court concludes that the plaintiffs are aggrieved persons as required by Tennessee Code Annotated section 4-5-322(a)(1) to permit them to seek judicial review. In so concluding, the Court determines that "aggrieved" persons, as stated in the *Brentwood* case's citation of federal law, casts a broader net. This Court concludes that the term "affected" persons in Tennessee Code Annotated section 4-5-223 is not as broad. Relying heavily on the statement in the *Brentwood* case of federal law that "aggrieved" looks beyond the common law interest and substantive statutory rights upon which prudential standing traditionally rests, this Court reasons that POST's rules, themselves, open that agency's inquiries concerning decertification, somewhat, to the public with the provision in Rule 1110-2-.04(2) [sic] that "complaints received by POST Commission are to be documented and if allegations are warranted, the proper investigating authority will be notified, and the proper action taken." In this case the plaintiffs availed themselves of the right granted to them under POST's rules by filing a complaint with POST on May 30, 2007. The allegations of the plaintiffs' complaint before this Court are that POST refused to investigate the complaint and commence a decertification hearing based upon POST's application of an erroneous legal standing. These allegations, the Court concludes, are sufficient to establish that the plaintiffs are "aggrieved" as required by Tennessee Code Annotated section 4-5-322(a)(1) to challenge the refusal of the POST Commission to investigate the plaintiffs' complaint and take proper action.

Further, . . . the Court concludes that the plaintiffs have stated a claim that the number and character of Deputy Sheriff Hutchison's convictions state a viable claim of misconduct, committed with respect to official work, and qualify as a violation of state law related to dishonesty to warrant an

-25-

investigation and decertification hearing by POST. The Court further concludes that the plaintiffs have stated a claim that the POST Commission's narrow construction of the scope of the decertification law in relation to the plaintiffs' May 30, 2007 citizen complaint that resulted in the Commission not investigating the complaint, not reviewing the conduct and not applying the proper scope of the decertification standards to decide what actions should be taken violated the plaintiffs' Rule 1110-2-.04(2) [sic] right that "proper action" be taken on citizen complaints. For these reasons, as well, the plaintiffs come within the zone of interest sought to be protected by the statutes in issue.

Thus, the trial court "rel[ied] heavily" on this Court's analysis of federal law in the *City of Brentwood* case in determining that the term "aggrieved person" in Section 4-5-322 "casts a broader net" than the term "affected [person]" in Section 4-5-223 and, thus, would include the Plaintiffs under the circumstances of this case. Explaining the imperative for its lengthy analysis, the trial court stated that "it is the process, investigation, deliberate and correct review and explanation to the citizenry of this matter by the POST Commission which is essential" and "important for the credibility of the law enforcement certification process in Tennessee."

After determining that the Plaintiffs had standing to assert that their rights under Rule 1110-02-.04 were violated, the trial court nevertheless concluded that the Plaintiffs did not have the *right to participate* in any contested case hearing on the decertification of Hutchison. Again recognizing the Plaintiffs' "second-tier connection" to the proceedings, it stated that "POST's obligation to the plaintiffs is to act on the latter's complaint using a correct legal standard. That obligation, though, does not give the plaintiffs the right to participate in the contested case hearing. As required by statute, the decertification hearing must be prosecuted at the behest of POST."[32]

On June 4, 2009, the Plaintiffs filed a motion pursuant to Rule 12.03 of the Tennessee Rules of Civil Procedure for judgment on the pleadings, asking the trial court to "grant[ ] the relief sought by Plaintiffs' May 30, 31 and June 1, 2007 complaints and request[s] to P.O.S.T." Specifically, the Plaintiffs argued that, pursuant to Section 4-5-223(c), they were entitled to judicial review of the POST Commission's refusal to issue a declaratory order, stating, among other things, that Hutchison was not qualified to serve as sheriff as of the date of his criminal contempt convictions in February 2003, that the POST Commission's 2003

---

[32]The Plaintiffs and the POST Commission filed motions for interlocutory appeal of the trial court's May 1, 2009 decision. These motions were rendered moot by the trial court's subsequent entry of a final order.

conclusion that Hutchison should not be decertified as a result of those convictions was erroneous, and that the POST Commission's August 17, 2007 decision to dissolve the temporary suspension of Hutchison's certification was incorrect as a matter of law.

On June 26, 2009, the trial court entered a final order granting the Plaintiffs' motion for judgment on the pleadings with respect to Count V of the complaint. Incorporating the language in its May 1, 2009 order, the trial court held that "POST's failure to convene an investigation and [take] proper action constitute grounds for judgment on the pleadings in this case to reverse that action by POST and send this matter back to the POST Commission for investigation and proper action against Officer Hutchison." In addition, the trial court held that "the POST Commission's August 17, 2007 termination of this Court's Temporary Suspension Order in [*DeSelm III*] was erroneous as a matter of law." Therefore, the trial court concluded that the POST Commission's decision "not to investigate and take proper action on the plaintiffs' May 30, 2007 complaint violated Tennessee Code Annotated § 38-8-106(4) and the POST Commission's Rule 1110-2-.04(2)(a)(2) [sic]." Based on these holdings, the trial court remanded the case to the POST Commission with the following instructions:

> (1) under POST Commission Rule 1110-02-.04(2)(a)(2), crimes "relating to" dishonesty do not require that dishonesty be an element of the crime, and Hutchison's six convictions for criminal contempt are convictions which trigger suspension or revocation of certification under that rule;
> (2) the POST Commission's 2003 decision not to investigate Hutchison does not apply and does not bar investigating and taking action on the May 30, 2007 complaint filed by Plaintiffs because of changed circumstances; first, Hutchison was given a different position with the Knox County Sheriff's Department in 2007, and secondly, Hutchison's convictions were affirmed after that decision was made;
> (3) the POST Commission must convene a contested case hearing to decide whether to suspend or revoke Hutchison's certification using these standards; and
> (4) Plaintiffs have standing to pursue this action based on the ability to file complaints provided in POST Commission Rule 1110-02-.04(2), but they are not allowed to participate in any contested case hearing on remand, because they lack standing to do so.

Both the POST Commission and the Plaintiffs now appeal this decision.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

The POST Commission raises several issues on appeal:

1. The trial court did not have subject matter jurisdiction to hear the case
2. The POST Commission's decision whether to investigate a complaint filed under POST Commission Rule 1110-02-.04(2) is not subject to judicial review under Section 4-5-322
    a. Section 4-5-322 applies to the review only of contested cases
    b. Plaintiffs do not have standing to seek relief under 4-5-322
    c. POST Commission Rule 1110-02-.04 does not confer any procedural rights on Plaintiffs
3. Decisions concerning whether to investigate and/or bring an action against a peace officer's certification rests within the sound discretion of the POST Commission and are not subject to judicial review

On cross-appeal, the Plaintiffs raise the following issues:

1. The trial court and the Administrative Judge failed to consider all of Plaintiffs' claims for standing
2. The trial court erred in dismissing Counts I, II, III, and IV of their complaint
    a. the POST Commission does not have sovereign immunity from declaratory judgment actions
    b. The trial court and the Administrative Judge failed to consider all of Plaintiffs' standing claims
3. Restrictions on their rights at a new contested hearing before the POST Commission conflicts with their rights under the Tennessee Rules of the Administrative Procedures Division
4. The Manifest Public Fairness Doctrine should be applied to have the trial court resolve the conflicts between its orders and the 2003 POST Commission order; the June 15, 2007 POST order and the August 17, 2007 order

We review the trial court's findings of fact *de novo* on the record, presuming those facts to be correct unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). We review questions of law *de novo* on the record, with no such presumption of correctness. ***See State v. Levandowski***, 955 S.W.2d 603, 604 (Tenn. 1997); ***Ridings v. Ralph M. Parsons Co.,*** 914 S.W.2d 79, 80 (Tenn. 1996); ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993).

ANALYSIS

As a threshold matter, we are required to determine whether this Court has subject matter jurisdiction to adjudicate the Plaintiffs' claims. Subject matter jurisdiction is the "authority of a court to adjudicate a controversy brought before it." *Haley v. Univ. of Tenn.-Knoxville*, 188 S.W.3d 518, 522 (Tenn. 2006) (quoting *Kane v. Kane*, 547 S.W.2d 559, 560 (Tenn. 1977)). In the proceedings below, the issue of the Plaintiffs' standing to bring this action was the subject of much debate, and was a predominant issue in the various chancery court rulings. In cases in which "a statute creates a cause of action and designates who may bring an action, the issue of standing is interwoven with that of subject matter jurisdiction and becomes a jurisdictional prerequisite." *Osborn v. Marr*, 127 S.W.3d 737, 740 (Tenn. 2004); *see also Pub. Employees for Envt'l Responsibility (Peer) v. Tenn. Water Quality Control Bd.*, No. M2008-01567-COA-R3-CV, 2009 WL 1635087, at *6 (Tenn. Ct. App. June 10, 2009). Standing is a necessary prerequisite to the court's exercise of jurisdiction. *Osborn*, 127 S.W.3d at 740. Stated differently, in the context of this case, if the Plaintiffs do not have standing to bring the claims asserted below, then this Court and the trial court below are without subject matter jurisdiction to hear them. *Id.* at 741. Thus, we must join the parties and the trial court in further exploration of the doctrine of standing.

The determination of whether subject matter jurisdiction exists is a question of law, which we review *de novo*, with no presumption of correctness in the trial court's decision. *Staats v. McKinnon*, 206 S.W.3d 532, 542 (Tenn. Ct. App. 2006). We consider first whether the trial court erred in dismissing Counts I, II, III, IV, and VI of the Plaintiffs' complaint. We then address separately whether the trial court erred in finding that the Plaintiffs had standing to assert the claims in Count V.

### Counts I-IV and VI

Counts I-IV of the Plaintiffs' complaint seek declaratory relief that Hutchison should not be a certified law enforcement office on various bases, namely, his criminal contempt convictions, his alleged lack of good moral character, the lack of an investigation into his moral character, and declaratory relief on the effective date of his disqualification as a certified law enforcement officer. Count VI seeks judicial review under Tennessee Code Annotated § 4-5-322 of the decision of the Administrative Procedures Division to deny the Plaintiffs a contested case hearing.[33] The trial court dismissed these Counts of the complaint based in part on its finding that "the plaintiffs' status as taxpayers does not give them standing," in agreement with the finding of Admin. Judge LaFevor.

---

[33]Apparently, the trial court construed this count in the complaint as a request for declaratory relief, considering Counts I-IV along with Count VI.

The doctrine of standing is "a judge-made doctrine based on the idea that '[a] court may and properly should refuse to entertain an action at the instance of one whose rights have not been invaded or infringed.' " *Mayhew v. Wilder*, 46 S.W.3d 760, 766-67 (Tenn. Ct. App. 2001) (quoting 59 AM. JUR. 2D *Parties* § 30 (1987)). The doctrine "is used to determine whether a particular plaintiff is entitled to judicial relief. It requires the court to determine whether the plaintiff has alleged a sufficiently personal stake in the outcome of the litigation to warrant a judicial intervention." *Wood v. Metro Nashville & Davidson County Gov't*, 196 S.W.3d 152, 157 (Tenn. Ct. App. 2005) (citations omitted). "To establish standing, a plaintiff must show: (1) that it has sustained a distinct and palpable injury, (2) that the injury was caused by the challenged conduct, and (3) that the injury is one that can be addressed by a remedy that the court is empowered to give." *Id.* at 157-58.

The doctrine of standing is an important check on the power of the judicial branch in a democracy. As this Court has recognized, the doctrine of standing precludes courts from adjudicating an action at the insistence of one whose rights have not been infringed:

> Grounded upon "concern about the proper – and properly limited – role of the courts in a democratic society," the doctrine of standing precludes courts from adjudicating "an action at the instance of one whose rights have not been invaded or infringed." . . . Without limitations such as standing and other closely related doctrines "the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights."

*ACLU of Tenn. v. Darnell*, 195 S.W.3d 612, 619-20 (Tenn. 2006) (citations omitted), *quoted in Owings*, 2009 WL 1470704, at *3.

The Supreme Court of Tennessee addressed the standing of private citizens to challenge the actions of public officials in *Bennett v. Stutts*, 521 S.W.2d 575 (Tenn. 1975), cited by both parties in this case. In *Bennett*, eighteen residents and taxpayers of Dyer County filed a lawsuit against the Dyer County Quarterly Court and its members, seeking to invalidate the election of the Dyer County Superintendent of Public Instruction. The plaintiffs in *Bennett* alleged that the election, carried out by secret ballot of the Quarterly Court, was conducted in direct violation of a statute that required that all votes be held openly, with each member's vote entered on the record. *Bennett*, 521 S.W.2d at 576 (citing T.C.A. § 5-518). The plaintiffs asserted that the Quarterly Court engaged in a pattern of persistent violation of this statutory requirement, and they sought a declaration voiding the election of the Superintendent and restraining and enjoining the Superintendent from taking office or performing any of the duties of office. *Id.* The trial court held that the action should have

been filed as a *quo warranto* proceeding or by the candidate in the challenged election. The plaintiffs then amended their complaint to state a *quo warranto* claim for relief. However, the trial court then dismissed the lawsuit for lack of standing, finding that *quo warranto* actions must be brought by the Attorney General, not by private citizens.

In affirming the decision of the trial court, the Supreme Court recognized the "settled law in this state that private citizens, as such, cannot maintain an action complaining of the wrongful acts of public officials unless such private citizens aver special interest or a special injury not common to the public generally." **Bennett**, 521 S.W.2d at 576 (citing **Patton v. City of Chattanooga**, 65 S.W. 414 (Tenn. 1901); **Skelton v. Barnett**, 227 S.W.2d 774 (Tenn. 1950); **Badgett v. Broome**, 409 S.W.2d 354 (Tenn. 1966)). In further explanation, the Court quoted the following excerpt from AMERICAN JURISPRUDENCE 2D:

> Public wrongs or neglect or breach of public duty generally cannot be redressed at a suit in the name of an individual or individuals whose interest in the right asserted does not differ from that of the public generally, or who suffers injury only in common with the public generally, and not peculiar to himself, even, it seems, though his loss is greater in degree, unless such right of action is given by statute.
>
> The broad general principle is asserted that in the absence of a statute imposing liability, an action will not lie in behalf of an individual who has sustained a private injury by reason of the neglect of a public corporation to perform a public duty. When the duty of taking appropriate action for the enforcement of a statute is entrusted solely to a named public officer, private citizens cannot intrude upon his functions. In cases of purely public concern and in actions for wrongs against the public, whether actually committed or only apprehended, the remedy, whether civil or criminal, is as a general rule by a prosecution instituted by the state in its political character, or by some officer authorized by law to act in its behalf, or by some of those local agencies created by the state for the arrangement of such of the local affairs of the community as may be entrusted to them by law.

*Id.* at 577 (quoting 59 Am. Jur. 2d *Parties* § 30).

The **Bennett** Court acknowledged that requiring such actions to be brought by the Attorney General "can create insurmountable problems," and cautioned that "[p]ublic spirited citizens should not be stifled or stopped in their search for [a] solution to public wrongs and official misconduct such as are involved in this case." *Id.* To prevent the stifling of such citizens, the **Bennett** Court noted that, "[i]f the District Attorney General, in matters such as this,

-31-

should act arbitrarily or capriciously or should be guilty of palpable abuse of his discretion in declining to bring such an action, or in authorizing its institution, the courts will take jurisdiction upon the relation of a private citizen, in the name of the State of Tennessee." *Id.* (citing cases). Under the circumstances in ***Bennett***, however, the Court held that the plaintiffs did not have standing, because they did not have a special injury not common to the public generally. *Id.*

In the instant case, the POST Commission argues that, as in ***Bennett***, the Plaintiffs did not have standing to bring this action, because they failed to establish a special interest or an injury not common to the public generally. In support, it cites two recent decisions from this Court.

First, the Commission points out that, in ***DeSelm I***, the Plaintiffs argued that they had standing to pursue actions for ouster and claims under the Little Hatch Act, because they were "public spirited citizens" trying to protect local taxpayers. The appellate court in ***DeSelm I*** rejected this argument summarily, holding that such a basis for standing was "clearly" inadequate to show a special interest or injury not common to the public generally. ***DeSelm I***, 2008 WL 4614523, at *6.

Second, the POST Commission cites ***State ex rel. DeSelm v Owings***, No. E2008-02326-COA-R3-CV, 2009 WL 1470704, at *2 (Tenn. Ct. App. May 27, 2009). In that case, the same Plaintiffs involved in the instant case[34] sought a declaratory judgment and a writ of mandamus, asking the trial court to require that the Knox County officers who were elected in August 2008 be sworn in immediately following the certification of the election results. The Plaintiffs asserted that they had standing to pursue the action. In ***Owings***, the Plaintiffs described themselves "as members of partnership of publicly spirited citizens" with "13 objectives in pursuit of the partnership's 'purpose,' " and purported to act for themselves and "voters, taxpayers, candidates, [and] civic[-]minded citizens." ***Owings***, 2009 WL 1470704, at *2. They sought to bolster their claim of standing by pointing out that they had participated in some eighteen lawsuits against various defendants in furtherance of the partnership's purpose, arguing that their initiation of these lawsuits reflected their "special interest, not shared by the public generally." *Id.* The trial court nevertheless dismissed the complaint for lack of standing.

On appeal in ***Owings***, the Plaintiffs acknowledged the general rule that private citizens may not bring suit based on the wrongful acts of public officials unless they could aver a special interest or special injury not common to the public generally. They argued, however, that

_____

[34]The ten plaintiffs in ***Owings*** are all Plaintiffs in the instant case. Richard Held and Susan Jerkins, who are Plaintiffs in the instant case, were not named plaintiffs in ***Owings***.

their lawsuit fell within the exception set out in **Bennett v. Stutts**, because they had served a copy of the complaint on the Attorney General, who refused to proceed with the action. Because he refused to proceed, the Plaintiffs argued that the trial court was obligated to hold a hearing to determine whether the Attorney General had wrongfully refused to proceed with the action, regardless of whether Plaintiffs otherwise had standing. **Id.** at *4. This Court rejected that argument, holding that a recalcitrant Attorney General does not convert a plaintiff without standing in the traditional sense into a plaintiff who has standing:

> **Bennett**'s reference to the district attorney general is simply a recognition of the unique role of the attorney general in suits of this nature. However, despite this unique role, **Bennett** makes clear that the attorney general cannot "act arbitrarily or capriciously" or "be guilty of palpable abuse of his discretion in declining to" pursue or allow such a suit to be pursued in the attorney general's name. **Bennett** does *not* expressly say that the failure to act of a recalcitrant attorney general will, *ipso facto*, convert a plaintiff, *without standing in the traditional sense*, into a plaintiff with standing. In the absence of such an express holding by the High Court, we conclude that the failure of an attorney general to act or allow his or her name to be used, simply means that the attorney general's preeminent role in this area will give way to a *plaintiff with standing*.

**Id.** at *5 (citations omitted; emphasis in original). Thus, it held that the Plaintiffs did not have standing because they did not "aver special interest or a special injury not common to the public generally." **Id.** (quoting **Bennett**, 521 S.W.2d at 576); **see also State ex rel. DeSelm v. Knox County Comm'n**, No. E2008-02627-COA-R3-CV, 2010 WL 2978163, at *5-7 (July 30, 2010) (following **Owings**, holding that these plaintiffs lacked standing to seek removal of Knox County office holders in a *quo warranto* action because they did not have a special interest or a special injury not common to the public); **State ex rel Watson v. Waters**, No. E2009-01753-COA-R3-CV, 2010 WL 3294109, at *6 (Tenn. Ct. App. Aug. 20, 2010) (holding that citizens seeking relief as to officials in Sevier County did not have standing).

In this case, the Plaintiffs argue that the trial court erred in dismissing their claims for declaratory relief in Counts I, II, III, IV, and VI based on lack of taxpayer standing. They assert that this Court's decisions in **DeSelm I** and **Owings** are unreported decisions that are merely advisory, not controlling, and that they should not be followed in this case. Plaintiffs argue that this Court in those cases misconstrued **Bennett v. Stutts** in determining that Plaintiffs lacked standing.

-33-

We are unpersuaded by the Plaintiffs' argument that the ***DeSelm I*** and ***Owings*** cases should be disregarded because they are not reported decisions, and we agree with the analysis in those cases. Here the Plaintiffs have shown no special interest or injury beyond their concern as "public spirited citizens." The fact that this "partnership" has filed numerous lawsuits does not, in and of itself, create a "special interest" necessary for standing. Thus, we must agree with both Chancellor Lyle and Admin. Judge LaFevor that the Plaintiffs do not have standing to seek declaratory relief pertaining to Hutchison's certification as a peace officer. Therefore, we affirm the trial court's conclusion that the Plaintiffs lacked standing to seek declaratory relief requested in Counts I, II, III, IV, and VI of their complaint.

Alternatively, the Plaintiffs argue that, if this Court affirms the trial court's conclusion that, as taxpayers, they did not have standing to pursue Counts I, II, III, IV, and VI, then this Court should remand the case to the trial court to consider other bases for establishing standing, including: (1) derivative statutory standing; (2) standing under ***Bennett v. Stutts***; (3) constitutional "local" taxpayer standing; (4) Tennessee taxpayer standing; and (5) constitutional political association standing; (6) derivative right to sue from action localized to Knox County; (7) right to sue the State provided by legislature; and (8) special interest and injury standing. They claim that the issue of standing was not fully developed in this case, and they request that this Court remand the case for consideration of these alternative bases for standing.

We must respectfully decline the Plaintiffs' request for a remand for further consideration of their standing to maintain this lawsuit. From our careful review of the record, the trial court was fully presented with the Plaintiffs' arguments regarding standing, and it conducted an exhaustive analysis of the case and the arguments presented by the parties. We find no basis in the record for a remand of the case for reconsideration of these issues.

## Count V

We next address the Plaintiffs' standing to maintain Count V of their complaint, construed by the trial court as a petition for judicial review of the actions of the POST Commission, pursuant to Section 4-5-322 of the UAPA. T.C.A. § 4-5-322.

The trial court below held that the Plaintiffs had standing, pursuant to Section 4-5-322, to seek judicial review of the POST Commission's August 17, 2007 decision not to refer the issue of Hutchison's decertification for further investigation. It found such standing arose from POST Commission Rule 1110-02-.04(2), which authorizes citizens to file complaints with the Commission regarding officer certification, and provides further that if the allegations are warranted, the POST Commission must notify the investigating authority and take "proper action." Because the Plaintiffs filed such a complaint, the trial court held, they

were "aggrieved" persons under Section 4-5-322 as a result of the POST Commission's failure to take "proper action" on their complaint. On appeal, the POST Commission argues that the trial court erred in concluding that the Plaintiffs are "aggrieved" persons within the meaning of Section 4-5-322, because they do not have a special interest in the agency's final decision, and they are not subject to a special injury not common to the public generally.

The Plaintiffs maintain that the trial court correctly held that they had standing to bring the action for judicial review under the UAPA, because "POST Rule 1110-02-.04(a)(2) [sic] provided Appellees a right to present the claims. After POST voted to convene a contested hearing on the claims, Appellees became a party . . . ."[35] They argue that, in accordance with the caselaw upon which the trial court relied, the UAPA should be given a liberal construction and should be interpreted so as to confer standing upon them as "aggrieved" persons.

To reiterate, it is the "settled law in this state that private citizens, as such, cannot maintain an action complaining of the wrongful acts of public officials unless such private citizens aver special interest or a special injury not common to the public generally." **Bennett**, 521 S.W.2d at 576 (citing **Patton v. City of Chattanooga**, 65 S.W. 414 (Tenn. 1901); **Skelton v. Barnett**, 227 S.W.2d 774 (Tenn. 1950); **Badgett v. Broome**, 409 S.W.2d 354 (Tenn. 1966)). This "special interest" or "special injury," also referred to as a "distinct and palpable injury," means an injury that is not common to the public generally. **Wood**, 196 S.W.3d at 157 (citations omitted).

The statute at issue, Section 4-5-322(a), specifies that relief may be had only by an "aggrieved" person:

> (a)(1) *A person who is aggrieved* by a final decision in a contested case *is entitled to judicial review* under this chapter, which shall be the only available method of judicial review. A preliminary, procedural or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy.

T.C.A. § 4-5-322(a)(1) (2005) (emphasis added). Our Supreme Court has recognized that, regardless of whether review of an administrative board's decision is through the procedures set out in the UAPA or through a petition for a writ of certiorari, "review of a final order or judgment of any board of commission functioning under the laws of this state is limited to

---

[35]The Plaintiffs also argue that the appellate court decisions in **DeSelm I** and **Owings** are not instructive on the issue of standing as to Count V either, because they are unreported cases. As noted above, this argument is without merit.

those 'aggrieved' by the decision." ***Roberts v. State Bd. of Equalization***, 557 S.W.2d 502, 503 (Tenn. 1977).

The term "aggrieved" is not defined in the statute. As used in Section 4-5-322, however, the term does not include all persons who are "aggrieved" with in the lay meaning of the term, i.e., persons who are "troubled or distressed in spirit."[36] This Court has held that "[t]o qualify as a person aggrieved, in the legal sense, or as a person having a direct, immediate, and substantial interest in the subject matter of the litigation, a party must have a personal or property right to assert or defend in court in their own name, not a mere general interest in the subject matter of the litigation in common with other citizens." ***Metro. Gov't of Nashville & Davidson County v. Dep't of Safety***, 1986 WL 8973, at *6 (Tenn. Ct. App. Aug. 20, 1986). In the context of administrative proceedings, an "aggrieved person" is a person who has a special interest in the agency's final decision, or one who claims to have suffered a special injury as a result of the decision that is not "common to all citizens similarly situated." ***McRae v. Knox County***, No. E2003-01990-COA-R3-CV, 2004 WL 1056669, at *3 (Tenn. Ct. App. May 7, 2004) (quoting ***Town of East Ridge v. City of Chattanooga***, 235 S.W.2d 30, 32 (Tenn. 1950)). "The sort of distinct and palpable injury that will create standing must be an injury to a recognized legal right or interest." ***Wood***, 196 S.W.3d at 158. Where a party seeks relief under a statutory right, "the doctrine of standing requires the party to demonstrate that its claim falls within the zone of interests protected or regulated by the statute in question." ***Id.*** Thus, in order to be "aggrieved," a person "must satisfy the requirements of standing to sue." ***Tenn. Envt'l Council v. Solid Waste Disposal Control Bd.***, 852 S.W.2d 893, 896 (Tenn. Ct. App. 1992).

In finding standing to assert Count V, the trial court relied in part on ***City of Brentwood v. Metropolitan Board of Zoning Appeals***, 149 S.W.3d 49 (Tenn. Ct. App. 2004), in which the court held that a neighboring city, Brentwood, had standing to seek judicial review of a decision of the Davidson County Board of Zoning Appeals regarding a building permit for a billboard in Davidson County along the corridor with Brentwood. In particular, the trial court relied on the appellate court's statement that "[h]istory associates the word 'aggrieved' with a congressional intent to cast the standing net broadly – beyond the common-law interests and substantive statutory rights upon which 'prudential' standing traditionally rested." ***Id.*** at 57 (quoting ***Federal Election Com'n v. Akins***, 524 U.S. 11, 19 (1998)). Casting a "broad net" then, the trial court in the instant case found that the Plaintiffs came "within the zone of interest to be protected by the statutes in issue."

In ***City of Brentwood***, the court observed that, in land use cases, "many courts have recognized that local governments may have standing to challenge the land use decisions of

---

[36]WEBSTER'S THIRD NEW INT'L DICTIONARY 41 (1993).

neighboring local governments as long as the necessary aggrievement exists." *Id.* at 58. It explained that, in land use cases, "the concept of 'aggrievement' supplies the distinct and palpable injury needed to have standing. When applied to local governments, aggrievement encompasses interference with a local government's ability to fulfill its statutory obligations, or substantial, direct, and adverse effects on the local government in its corporate capacity." *Id.* (citations omitted). In its petition, the City of Brentwood had alleged that the construction of the subject billboard would damage the "aesthetically appealing entrance to Brentwood, thereby hurting the image of the City and its attractiveness to future residents, businesses, tourists and other visitors," and would interfere with Brentwood's "Franklin Road corridor program." *Id.* at 59. This was found to be a substantial, direct, and adverse effect on Brentwood in its corporate capacity, so the City of Brentwood was deemed to be "aggrieved" within the meaning of the statutes. *Id.*

Assuming that the analysis in *City of Brentwood* would apply to the claim in Count V of the complaint,[37] with respect, we find that it only confirms our misgivings about the trial court's analysis of the Plaintiffs' standing to maintain Count V. In *City of Brentwood*, to determine standing, the Court focused on whether the interests Brentwood sought to protect were "within the zone of interests protected by Nashville's zoning ordinance." *Id.* at 55, 56. Ultimately, Brentwood was deemed to have standing because it would suffer "substantial, direct, and adverse effects" from *the construction of the billboard*. *Id.* at 59. In other words, Brentwood stood to suffer a direct injury from the outcome, the ultimate decision of the administrative body.

In the case at bar, as to the ultimate outcome of the POST Commission proceedings, the trial court correctly found that the only injury that the Plaintiffs would suffer was that of (very) concerned taxpayers. It found standing to assert Count V, however, because the Plaintiffs filed a complaint with the Commission, their complaint stated "a viable claim of misconduct" by Hutchison, and the POST Commission did not take "proper action" in response to their complaint. Thus, although the Plaintiffs would suffer no direct and palpable injury from the POST Commission's final decision not to decertify Hutchison, they were found to have suffered direct and palpable injury from the POST Commission's failure to take the proper steps to reach its decision. The Plaintiffs, by filing a complaint within the Commission, were in effect deemed to have created standing with regard to the *process*, but not the ultimate outcome.

---

[37]Count V of the complaint was construed below as asserting a claim under Tenn. Code Ann. § 4-5-322. The *City of Brentwood* case evaluated standing and aggrievement under Tenn. Code Ann. §§ 13-7-206(b) and 27-9-101. *City of Brentwood*, 149 S.W.3d at 56-57.

Even if the *City of Brentwood* "broad net" analysis of standing is applied, this is simply a bridge too far. If a person was not "aggrieved" within the meaning of Section 4-5-322 before he or she filed a complaint with the POST Commission, he or she cannot be converted into an "aggrieved" person simply by filing such complaint. *See Owings*, 2009 WL 1470704, at *5 ("*Bennett* does *not* expressly say that the failure to act of a recalcitrant attorney general will, *ipso facto*, convert a plaintiff, *without standing in the traditional sense*, into a plaintiff with standing." (Emphasis in original)).

This rule of law is consistent with the terms of the administrative regulation relied on by the Plaintiffs, POST Commission Rule 1110-02-.04. The Rule does not expressly confer any rights on persons who file a decertification complaint, nor does it purport to provide legal recourse to those whose complaints are not treated satisfactorily. The Plaintiffs imply such legal recourse from the provisions that complaints filed with the Commission will be documented, and that, "if allegations are warranted," proper action will be taken. The POST Commission Rule, however, "places no restriction on who may file a complaint with the POST Commission[;] . . . there is no requirement that the person filing the complaint be a law enforcement agency or have any particular standing." Tenn. Op. Atty. Gen. No. 00-191. The complaint may be anonymous, or it may come from someone who is not a citizen of the affected county, or of Tennessee, or even of the United States. The logical extension of the Plaintiffs' reasoning would confer standing on a person outside of Tennessee to seek judicial review of the POST Commission's mishandling of their complaint against a Tennessee law enforcement officer. Such a result does not comport with the well-established law of standing. Therefore, under these circumstances, we cannot find that the mere filing of a complaint with the POST Commission, even one with apparent merit, creates standing to seek judicial review of the POST Commission's handling of the complaint.

The Plaintiffs insist that, given the clear merit of their cause, there must be some means for it to be addressed by the courts. However, "[t]he primary focus of a standing inquiry is on the party, not on the merits of the party's claim. Thus, a party's standing does not depend on the likelihood of success of its claim on the merits." *Wood*, 196 S.W.3d at 158 (citations omitted).

This analysis is consonant with the longstanding judicial construction of Tennessee law that private citizens, as such, cannot maintain a legal action regarding the wrongful acts of public officials, absent a "special interest or a special injury not common to the public generally." *Bennett*, 521 S.W.2d at 576 (citing cases). "The legislature is presumed to know the interpretation which courts make of its enactments," and "the fact that the legislature has not expressed disapproval of a judicial construction of a statute is persuasive evidence of legislative adoption of the judicial construction." *Hamby v. McDaniel*, 559 S.W.2d 774, 776 (Tenn. 1977) (citing cases). The legislature is, of course, at liberty to enact legislation which

would expressly afford public-spirited citizens such as the Plaintiffs a legal remedy, and has done so on in specific instances. ***See, e.g., State ex rel. Wolfenbarger v. Moore***, No. E2008-02545-COA-R3-CV, 2010 WL 520995, *3 (Tenn. Ct. App. Feb. 12, 2010) (quoting T.C.A. § 8-47-110), *perm. to app. granted and denied*, Aug. 25, 2010). The Legislature has enacted no such provision in this case, and this Court is not at liberty to judicially create such a remedy.

## CONCLUSION

Accordingly, we affirm the trial court's decision to dismiss Counts I, II, III, IV, and VI for lack of standing. We reverse the trial court's conclusion that the Plaintiffs had standing to challenge the POST Commission decision not to refer Hutchison's decertification for further investigation. Consequently, Count V must be dismissed for lack of standing. Therefore, the Plaintiffs do not have standing to maintain any of the claims in their complaint, and the complaint must be dismissed in its entirety. In light of these holdings, we find that the other issues raised by the parties and not directly addressed herein are pretermitted.[38]

The decision of the trial court is reversed in part and affirmed in part as set forth above, and the complaint is dismissed. Costs on appeal are to be taxed to Appellees Bee DeSelm, Carl Seider, James Gray, Donna Brian, Mike Whalen, Susan Jerkins, Gerald Bone, Richard Held, Albert Akerman, Margo Akerman, Robert Cunningham, and Millie Cunningham, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE

---

[38]On June 9, 2010, the Plaintiffs filed a "Motion to Apply The Manifest Public Fairness Doctrine." In that motion, the Plaintiffs requested that this Court apply the doctrine "to correct on remand any deficiencies the Court may determine pursuant to any arguments that Appellees did not correctly style the case as being brought in the name of the State of Tennessee for their claims pursuant to T.C.A. § 29-35-110." In light of our holding herein, we deny the Plaintiffs' motion.